56 CCPA

**UNITED MERCHANTS AND MANU-
FACTURERS, INC., Appellants,**

v.

**R. A. PRODUCTS INCORPORATED,
Appellee.**

**Patent Appeal No. 8002.**

United States Court of Customs
and Patent Appeals.

Dec. 5, 1968.

John P. McGann, New York City (Eugene Sabol, Washington, D. C., of counsel) for appellants.

R. L. Lobdell, pro se.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

WORLEY, Chief Judge.

R. A. Products seeks registration of "CONTACT" for "Plastic Gloves" under the "General Class—Clothing." United opposes on the conceded prior use and eleven registrations of "CONTACT" for piece goods, "CON-TACT" for various adhesive coated plastic materials, including flexible plastic sheeting for adhesive application to flat surfaces as a protective and decorative covering, and "CON-TACT" combined with other terms for generally related goods.

It appears that United's "CON-TACT" material has been sold throughout this country directly and through distributors to department stores, drug stores, wall paper and paint stores and other retail outlets. The "CON-TACT" plastic material is marketed generally in the houseware section of department stores, and sold abroad directly or through licensees.

It also appears that the seamless plastic glove merchandised by R. A. Products is sold in the retail market under the mark "Tender Touch," but the "CON-TACT" mark is allegedly restricted to use on gloves bought by professional, commercial and industrial users, particularly beauticians. Gloves bearing the "CONTACT" mark are sold through jobbers and wholesalers for resale and advertised generally in trade publications. Although R. A. Products asserts its "CONTACT" gloves have never been sold in the usual retail market, the Trademark Trial and Appeal Board nevertheless noted that applicant "has advertised 'CONTACT' gloves for factory, laboratory, office and *home use,* and for protection against *household,* medical and beauty shop chemicals."

In dismissing the opposition the board stated:[1]

While applicant's gloves and opposer's material are alike in that each is fabricated of a plastic material, they are the products of distinctly different manufacturing methods, they possess nothing in common with respect to their essential characteristics, uses, or sales appeal, they relate to distinctly different fields of trade, and considering that it has not been demonstrated

---

1. Reported at 150 USPC 205.

that opposer's adhesive coated plastic can be or is suitable for use in manufacturing gloves, it cannot be said that they are all goods within the natural expansion of opposer's business under the mark "CON-TACT". Under these circumstances and in view of the suggestive character of the term "CON-TACT" or "CONTACT", it is our opinion that, notwithstanding the possibility that these goods could or may be sold in the same retail outlets, the public would not be likely to expect such essentially different goods to originate with the same producer.

In applicant's favor it can be said that the channels of trade between the competing marks are *presently* different, and we have no reason to doubt the testimony of applicant that it plans no change in that policy. We cannot, however, ignore the advertisement plugging applicant's "CONTACT" gloves for general and particularly *household* uses, where many of opposer's products are also used, vis-a-vis its alleged primary market restricted to physicians and beauticians.

It is also true, as the board noted, that the various products are not identical and the manufacturing processes are different. It must be remembered, however, that the statute does not require identity of goods in determining a likelihood of confusion, and we question whether manufacturing processes are of any significance in that respect.

With due regard for the board's position, we are unable to agree with its reasoning or result. The involved products are certainly capable of use in the household where many of opposer's products are principally used, and when the identical mark is applied to such goods we think confusion is far more, rather than less, likely to occur in the mind of the purchaser.

It must be remembered that the opposer has spent time and money in establishing its marks. On the other hand, applicant has not chosen to select a mark so dissimilar to opposer's mark as to preclude a likelihood of confusion but has acted at its peril in adopting the identical mark used by opposer.

On this record we think purchasers would be likely to assume the goods emanated from a common source. In any event, we feel doubt on that score should be resolved against the newcomer. The United States Time Corp. v. Jacob Tennenbaum, 267 F.2d 327, 46 CCPA 895.

The decision is reversed.

Reversed.

SMITH, J., participated in the hearing of this case but died before a decision was reached.