58 CCPA

### The COMMUNITY OF ROQUEFORT, Appellant,

### v.

### Joseph B. SANTO, dba the Sign of the Dove, Appellee.

### Patent Appeal No. 8415.

United States Court of Customs and Patent Appeals.

June 24, 1971.

Samuel L. Davidson, Washington, D. C., attorney of record, for appellant.

Donald A. Hopper, New York City, for appellee.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

NEWMAN, Judge.

This appeal, submitted on brief by both parties, is from the decision of the Trademark Trial and Appeal Board[1] dismissing appellant's opposition to the registration by Joseph B. Santo, d/b/a The Sign of the Dove,[2] of the following composite mark for salad dressing on the Principal Register:

[A4174]

Appellant, The Community of Roquefort, is a municipality organized under the municipal laws of the Republic of France. It predicated the opposition on ownership of the registered certification mark[3] "ROQUEFORT" for cheese.[4] Applied to the goods the mark certifies, in essence, that the cheese has been manufactured from sheep's milk only and has been cured in the caves of Roquefort, France by processes long used there.

The record for appellant includes a discovery deposition of the appellee Santo and depositions (testimony-in-chief and rebuttal) of Frank O. Fredericks, an attorney for appellant and principal officer of Roquefort Association, a New York Corporation. A second deposition of Mr. Santo was taken later as testimony-in-chief in his behalf. Both parties submitted documentary exhibits.

The Roquefort Association, pursuant to authority vested in it by appellant has, since March 1950, licensed manufacturers throughout the United States to use designations including "ROQUEFORT CHEESE DRESSING" and "ROQUE-FORT SALAD DRESSING" to identify their salad dressings which contain at least a specified amount of "ROQUE-FORT" cheese.[5] The Association has spent considerable sums of money over the years to stop what it considers improper uses of "ROQUEFORT" in association with cheeses and dressings, and to advertise and publicize "ROQUE-FORT" cheese and salad dressing.

Appellee is president of a corporation which operates several restaurants in New York City, including one named "The Sign of the Dove." He originated the salad dressing used with the mark for which registration is sought. Appellee described that dressing as possessing some properties of "ROQUEFORT" dressing and Italian dressing, and stated

1. Reported in full at 157 USPQ 444 (1968).

2. Sought in application Serial No. 188,663, filed March 13, 1964, asserting first use on February 19, 1964, and disclaiming the words "SALAD DRESSING" apart from the mark as shown.

3. The definition of a certification mark is set forth in 15 U.S.C. § 1127 as follows:
The term "certification mark" means a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin, material, mode of manufacture, quality, accuracy or other characteristics of such goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

4. No. 571,798, registered March 10, 1953, on an application filed February 13, 1952.

5. At least 15 percent of "ROQUEFORT" cheese combined with a maximum of 85 percent of noncheese ingredients.

that the word "ROQUITAL" in the mark was derived from the first four letters of the word "ROQUEFORT" and the first four letters of the word "Italian." The first shipment of salad dressing under the mark was made on February 17, 1964 on an order for one bottle from a purchaser in Missouri. During the same month and before filing the application for registration in March of the same year, appellee sold 17 other bottles of the dressing to certain food editors and friends who frequented his restaurant, the orders being received by mail and the dressing shipped by parcel post in bottles bearing labels displaying the mark as reproduced above. Appellee testified that difficulties he had with the shelf-life of the dressing caused him to destroy some bottles of the dressing which remained unsold at the end of February. Although appellee has not sold any more bottles in interstate commerce, he apparently sought help with regard to the shelf-life problem. He also referred advertising, development, marketing and distribution matters concerning the product to a public relations firm working with a company handling food products, but further efforts have been held in abeyance pending outcome of the opposition proceeding.

The label which appellee used on the bottles for his "SIGN OF THE DOVE ROQUITAL SALAD DRESSING" lists, inter alia, "Roquefort cheese" and "Cheese solids" as ingredients. The description of goods in his application, however, does not limit the salad dressing sold under the mark to salad dressing containing "ROQUEFORT" cheese and we have given no weight to the fact that the salad dressing which he has sold to date has contained "ROQUEFORT" cheese.

The board found the pleadings to raise two issues: "namely, whether or not applicant's [appellee's] mark is merely descriptive or misdescriptive of his salad dressing and whether or not applicant's [appellee's] mark resembles "ROQUEFORT" in a manner likely to cause confusion, mistake or deception."

On the issue of descriptiveness, the board observed that, while appellee's mark comprises several components, it is but a single unitary mark. The board then concluded that viewed in its entirety the mark "does not in any way describe" appellee's salad dressing.

The board treated the issue of misdescriptiveness with the question of likelihood of confusion. It considered "ROQUITAL" to be a prominent feature of the mark and acknowledged that it might be used by purchasers to identify appellee's salad dressing. The board further stated:

\* \* \* "ROQUITAL", however, is readily distinguishable in sound and appearance from "ROQUEFORT", and it seems unlikely that any purchaser viewing applicant's mark in its setting would, because of the letters "ROQU", equate "ROQUITAL" with "ROQUE-FORT". The most that can be said about "ROQUITAL" is that it may suggest to some purchasers the presence of "ROQUEFORT" cheese in applicant's salad dressing, and since the label lists "ROQUEFORT" cheese as an ingredient, and it has not been definitely established that this is not in fact the case, such suggestion is not improper. And inasmuch as applicant has not designated its product as a "ROQUEFORT CHEESE DRESS-ING", the fact that it contains less than 15% "ROQUEFORT" cheese and other cheese solids is of no moment. It is our opinion that as long as a person is free to purchase "ROQUE-FORT" cheese on the open market without any restriction on use (we note that opposer's license agreements are on a voluntary and non-royalty basis), he is free to use as much as he wants of it in formulating a salad dressing for commercial sale so long as he does not misrepresent the contents thereof on the labels and/or sell it as a "ROQUEFORT CHEESE DRESSING" or under a mark confusingly similar to "ROQUEFORT". Applicant's activities under the mark in question have not come within any

of these proscriptions, and hence the registration sought by applicant will not be in derogation of opposer's established rights in the registered mark "ROQUEFORT".

■ Appellant's brief has not convinced us of any reversible error in the board's dismissal of the opposition. Rather, we are satisfied that appellee's mark is not descriptive or misdescriptive of the goods and that its use is not likely to cause confusion, or to cause mistake, or to deceive.

As practically its sole authority for argument to the contrary on both the "descriptiveness" and "likelihood of confusion" issues, appellant relies on B. M. Douglas Co., Inc. v. Abbotts Dairies, Inc., 67 USPQ 172 (Commr. 1945). There, the Assistant Commissioner of Patents sustained an opposition by a seller in this country of "ROQUEFORT" cheese made in Roquefort, France to registration of "Ameroque" for a cheese spread which did not contain any "ROQUEFORT" cheese. In so ruling, the Assistant Commissioner stated:

> * * * the name "Ameroque" is so similar to "American Roquefort" that the public and purchasers would be likely to be misled, confused and deceived into believing that the cheese spread to which applicant applies the name "Ameroque" contains roquefort cheese and therefore the notice of opposition should have been sustained and applicant declared not entitled to the registration for which it has made application. * * *

Appellant urges that this case is "sufficiently similar" to the present one "to be good precedent." However, we think the substantial difference in the respective marks sought to be registered precludes acceptance of the case as a significant precedent.

■ To reach the conclusion that the mark sought to be registered here is merely descriptive, we first would have to dissect it to consider only "ROQUITAL", and then to find that prospective purchasers would view "ROQUITAL" as merely describing the dressing to which it is applied as including "ROQUEFORT" cheese and Italian dressing components. Such a course is obviously unjustified. At most, "ROQUITAL" as applied to salad dressing, may suggest either a dressing including "ROQUEFORT" cheese and Italian dressing or a dressing having some resemblance to "ROQUEFORT" and Italian dressings. But mere suggestiveness obviously does not necessarily make a mark descriptive. In re Sunbeam Corporation, 370 F.2d 358, 54 CCPA 901 (1967); In re Colonial Stores, 394 F.2d 549, 55 CCPA 1049 (1968). Certainly, registration of appellee's mark including the term "ROQUITAL" would not affect the rights of others to describe a salad dressing as containing "ROQUEFORT" cheese and Italian dressing components.

As to the issue of likelihood of confusion, we think like the board that, quite apart from the fact that appellee's mark is a composite mark with additional words and design features, "ROQUITAL" is readily distinguishable from "ROQUEFORT" and it is unlikely that a purchaser would equate the two terms because they include the letters "ROQU". Indeed, that part of the public which might be prospective purchasers of "ROQUEFORT" cheese or salad dressing are likely to be sufficiently familiar with the terminal portion "FORT" of "ROQUEFORT" to promptly discern that "ROQUITAL" with the "ITAL" ending is a different term. We therefore do not think that the marks here so resemble each other that the public will be mistakenly led to believe that appellee's salad dressing is one certified by appellant.

■ Finally, appellant contended as an additional ground for its opposition that appellee had not used his mark in commerce.[6] The board characterized

---

6. The requirement that a mark be "used in commerce" appears in 15 U.S.C. § 1051 and the term "use in commerce" is defined in 15 U.S.C. § 1127.

that issue as an "ex parte matter" [7] but nevertheless considered it and concluded that it was not meritorious. We think that conclusion was correct. Admittedly, sales were made of bottles of the salad dressing in interstate commerce. As the board observed, the fact that sales were limited and may have been made for registration purposes does not invalidate an application where the circumstances indicate an intent to continue use. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (C.A. 2, 1956); Fort Howard Paper Co. v. Kimberly-Clark Corp., supra (note 7). Appellee's aforementioned negotiations with a public relations firm relative to handling development and marketing of the product indicate to us that he did intend to continue use of the mark. His subsequent decision to hold further activities in abeyance pending the outcome of the opposition appears to be but a reasonable business precaution and does not demonstrate a lack of intention to market the product commercially upon successful termination of the proeeding.

The decision of the board is affirmed.

Affirmed.

7. The question was raised in the notice of opposition and involves a matter which we think is therefore properly to be considered inter partes as a ground for sustaining the opposition. See Roux Laboratories, Inc. v. Clairol Incorporated, 427 F.2d 823, 57 CCPA 1173 (1970); Fort Howard Paper Co. v. Kimberly-Clark Corp., 390 F.2d 1015, 55 CCPA 947 (1968), cert. denied, 393 U.S. 831, 971, 89 S.Ct. 99, 21 L.Ed.2d 101.