59 CCPA

### Application of Hans LOCHER.
### Patent Appeal No. 8638.

United States Court of Customs and Patent Appeals.
March 23, 1972.
Rehearing Denied June 15, 1972.

Robert W. Fiddler, New York City, attorney of record, for appellant. Munson & Fiddler, New York City, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–12 in appellant's application serial No. 399,783, filed September 28, 1964, for feedback quality control mechanisms and methods. We affirm.

### The Subject Matter Claimed

The claimed invention regulates the operation of quality control equipment to produce a desired number of control actions per unit of time. The purpose of this regulation is to insure maximum utilization of available, on-line, quality-control equipment and operators. This purpose is accomplished by a feedback mechanism which regulates the sensitivity of defect-detection equipment. If a relatively large number of defects pass the defect-detection equipment during a given time period, the severity of the de-

fects not corrected will be relatively high, and if a relatively low number of defects pass the defect-detection equipment during a given time period, the severity of the defects not corrected will be relatively low. In any event, the product is as good as it can be for a given amount of quality control equipment and number of operators without interrupting production.

Appellant's specification relates his invention to the processing of yarns in the textile industry. Fig. 1 is a schematic diagram of an essentially electrical embodiment of appellant's invention as it might be employed in that industry. Fig. 2 is a schematic diagram of an equivalent electro-mechanical embodiment of appellant's invention. Fig. 1 is reproduced below:

Fig. 1

[A5483]

In this figure, the right-hand units 1, 1′, and 1″ contain the quality-control and defect-detection equipment, while the feedback mechanism is made up of the single unit to the left of the bus bars 4, 19, 30, and 27 and the transistors 15 in units 1, 1′, and 1″. In unit 1, 3 is the yarn, 2 is the defect-detection equipment (or "quality sensing element," as appellant terms it), which is a pair of

condenser plates between which the yarn passes, and 16 is a "cutter" which is apparently representative of the quality control equipment to be regulated. In the feedback mechanism, 7 is an impulse transmitter which produces a signal having an adjustable number of impulses per unit of time, 8 is a "combination means * * * in the form of a converter," and 9 is a step motor which converts the impulses which it receives from the combination means 8 into angular rotation of the potentiometer tapping arm 14 of the potentiometer 13. The other branch of the feedback mechanism consists of a transistor 15 in each of the yarn clearers 1, 1', and 1″ which "acts as a switch to control the passage of an error correcting defect signal," a resistor 17, and a "circuit element 18 which is comprised by a pulse former serving to transform the voltage drop across resistor 17 into pulses comparable with those coming from the datum signal impulse transmitter 7."

The impulse frequency of the impulse transmitter 7 is preset to the maximum rate of yarn cutting which can be handled by the available continuity-restoring equipment and operators without interrupting production. Impulses from this source are transmitted to step motor 9 so as to move potentiometer arm 14 *clockwise* which increases the sensitivity of quality-sensing elements 2, 2', and 2″. However, increased sensitivity of those element results in increased yarn cutting by cutters 16. Whenever a cutting action takes place, a signal occurs across resistor 17 and is transformed by circuit element 18 into a pulse which is delivered to step motor 9 so as to move potentiometer arm 14 *counterclockwise,* thereby decreasing the sensitivity of the quality-sensing elements. This negative feedback arrangement is said to "insure production of the highest quality yarn which the equipment can efficiently produce."

Apparatus claims 1 and 7 and method claims 4–6 are generic to both the essentially electrical and the electro-mechanical species disclosed in the specification, apparatus claims 2 and 10–12 are drawn to the essentially electrical embodiment of Fig. 1, and apparatus claims 3, 8, and 9 are drawn to the electro-mechanical embodiment of Fig. 2.

### The Rejections

I. Claims 1–12 were rejected under the first paragraph of 35 U.S.C. § 112 "as based on an inadequate disclosure." The solicitor has specifically disclaimed reliance on a "best-mode" theory, apparently interpreting this rejection as having been predicated on the how-to-make and how-to-use requirements.

II. Claims 1, 4, and 7 were also rejected under the second paragraph of 35 U.S.C. § 112 "as indefinite."

III. Additionally, the examiner stated that "A new title which is aptly descriptive of the invention claimed is required" and that

> In Figs. 1 and 2, block 17 must be drawn as a resistor. Each block 1, 7, 8, 18, 25, 28, [and] 33 must be labelled inasmuch as they do not symbolize conventional elements.

While the board did not "affirm" the examiner's objections to appellant's title and drawings, it did not disapprove of them, and appellant now asks us to do so. Appellant apparently bases this request on Rule 196(a), Rules of Practice in Patent Cases.

### OPINION

#### I. The Rejection Under the First Paragraph of § 112

█ There appear to have been several rationales for this rejection. First, and most generally, the examiner criticized appellant's specification because it states repeatedly that the teachings therein will "insure production of the highest quality yarn," or words to that effect, although appellant had admitted that the use of either embodiment might result in "a production run of poor quality." In response to that criticism, we quote the relevant passage from the specification in its entirety:

> Another object of the invention is to provide improved quality control

for yarn cleaning equipment in which the sensitivity of the quality control equipment is automatically regulated to insure production of the highest quality yarn *which the equipment can efficiently produce.* [Emphasis ours.]

The specification makes it abundantly clear that what appellant is trying to do is to make certain that the available, on-line, quality-control equipment and personnel will be used with maximum efficiency even though the product may still be "poor" if insufficient equipment and personnel are available. Accordingly, we do not agree with the solicitor that, "In that sense, the specification is clearly misleading or deficient."

██ More specifically, the examiner criticized the specification for "failing to define the 'combination means' [8]," stating that "The term 'combination means' does not describe a specific embodiment but merely a 'blank box' capable of combining two signals and is not seen to comply with the requirement of Rule 71." [1] The board extended this rationale to members 1, 2, and 18.[2] Appellant relies on United States patents to Jucker, Gith, Leopfe, Wilson, and Wick et al. (all of which were "made of record" in the examiner's first action) as evidence that circuitry for components such as 1, 2, 8, and 18 was so well known in the art as of his filing date that its disclosure in his specification is not required by the first paragraph of

35 U.S.C. § 112. Compare In re Barrett, 440 F.2d 1391, 58 CCPA 1155 (1971), and see generally, Janicke, Patent Disclosure—Some Problems and Current Developments, Part I, "Incorporation by Reference," 52 JPOS 707 (1970). However, none of these patents was included in the transcript of record certified to this court.

At oral argument, counsel for appellant moved for leave to submit the above five patents to the court "as exhibits," post-hearing. When asked for his comments the solicitor pointed out that appellant had not relied upon any of the five in his brief before the board and that he had relied only upon Jucker, Gith, and Loepfe in his request to the board for reconsideration. The solicitor then stated that he would have no objection to appellant's submission of those three patents as post-hearing additions to the record, "if in fact these references were considered by the board." However, he argued that two of the three, Gith and Loepfe, were irrelevant in any event because they had not yet issued as of appellant's filing date of September 28, 1964. Gith issued July 5, 1966 and Loepfe issued February 14, 1967.

The board's initial opinion states that "No references have been relied upon by the Examiner," and it discusses none of the five patents. The board's opinion on appellant's request for reconsideration contains no mention of the three patents

---

1. Obviously, the examiner was referring to the second sentence of subsection (b) of Rule 71. However, as we pointed out in In re Gay, 309 F.2d 769, 774, 50 CCPA 725, 733 (1962), "No direct statutory basis exists for this requirement other than * * * [the description, how-to-make, and how-to-use requirements of the first paragraph of 35 U.S.C. § 112], which it appears to implement," and we accordingly treat this rejection as one made under the how-to-make requirement *of the statute.*

2. Appellant's fifth reason of appeal is:
    5. The Board erred in raising issues for the first time in its decision as to elements 1, 2 and 18, which were not raised by the Examiner, without giving

applicant an opportunity to overcome these criticisms.

However, while appellant did point out at length in his request for reconsideration that the examiner had not challenged the sufficiency of his disclosure with respect to elements 1, 2, and 18, he did not request that the board's language be denominated a new ground of rejection under Rule 196(b) and that the case be returned to the examiner to give him the opportunity to overcome the new criticisms of his specification. Under the circumstances, we do not feel justified in remanding the case to the examiner for that purpose. Compare In re Wiechert, 370 F.2d 927, 933, 54 CCPA 957, 963–964 (1967).

which appellant had definitely drawn to the board's attention in his request.

We think that the solicitor's offer to waive objection to appellant's proferred post-hearing supplementation of the record "if in fact these references were considered by the board" places the wrong emphasis on the situation before us. While it is quite true that this court does not customarily consider references which were not considered by the board, or which were not at least argued to the board, the rationale for requiring appellants to provide the court with a transcript of the record below is quite different from the rationale for limiting appellate argument to the materials considered below. The trouble with appellant's conduct here is that it deprived appellee, the Patent Office, of an adequate record to use in preparing its brief and this court of an adequate record to use in preparing for oral argument and decision. This is an omission which cannot be waived by the appellee alone and which this court will not waive except upon a showing of a reasonable excuse for the omission. No such showing was made in this case; indeed, the facts set forth in the next paragraph strongly suggest that no such showing could have been made. Accordingly, appellant's motion is denied.

As we said in our supplemental opinion in In re Baird, 348 F.2d 974, 983, 52 CCPA 1747, 1759 (1965), "it was the duty of counsel for *both* sides * * * to have made sure that a record sufficient to show the essential facts was before us prior to hearing * * *." (Emphasis in original.) However, counsel for the Patent Office

noted the obvious deficiencies in the transcript of record in his brief filed seven months prior to hearing. Under the circumstances, we think that counsel for the Patent Office was relieved of any further duty to this court so far as the record was concerned. Counsel for appellant took no action to correct the deficiency in the record [3] although he had seven months warning concerning it, and appellant must suffer the consequences. Compare In re Orfeo, 440 F.2d 439, 440, 58 CCPA 1123, 1124–1125 (1971). It was his duty to provide us with a record containing all the papers he relies on to support his case. Since at least some of the elements 1, 2, 8, and 18 appear in both of the specifically disclosed embodiments of the invention and are recited in all claims, we affirm the rejection of all claims under the first paragraph of 35 U.S.C. § 112.

## II. *Points II and III*

Because we have affirmed the rejection of all of appellant's claims on the first ground stated, we have no need to discuss either the second ground of rejection (indefiniteness) or the examiner's objections to appellant's title and drawings. In the event appellant refiles this case, his attention is invited to Janicke, op. cit. supra, in connection with the second point, as well as the first, and to In re Searles, 422 F.2d 431, 435, 57 CCPA 912, 916 (1970), and Palisades Pageants, Inc. v. Miss America Pageant, 442 F.2d 1385, 1387–1388, 58 CCPA 1225, 1227–1228 (1971), in connection with the third.

The decision of the board is affirmed.

Affirmed.

3. Appellant could have moved formally under our Rule 13 to correct diminution of the record, and we recently approved a less formal procedure for dealing with such situations in In re D'Ancicco, 439 F.2d 1244 n. 1, 58 CCPA 1057 n. 1 (1971).