59 CCPA

**TIFFANY AND COMPANY, Appellant,**

v.

**NATIONAL GYPSUM COMPANY, Appellee.**

**Patent Appeal No. 8644.**

United States Court of Customs and Patent Appeals.

May 25, 1972.

Milo G. Coerper, Washington, D. C., attorney of record, for appellant; Coudert Brothers, Washington, D. C., of counsel.

Kenneth R. Sommer, Buffalo, N. Y. (Sommer, Weber & Gastel, Buffalo, N. Y.), attorneys of record, for appellee.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 161 USPQ 750 (1969), dismissing appellant's opposition to appellee's application to register the wordmark TIFFANY for wood-fiber, low density ceiling tile and ceiling grid panels. Appellee's application, serial No. 191,870, filed April 23, 1964, alleges first use in January 1949 and first use in interstate commerce in October 1950. Appellant's notice of opposition alleges that it

> * * * is, and long has been, engaged in the manufacture and sale of personal and household items, for personal or household ornamentation or decoration, continuously for more than 100 years or long prior to the first date of use which is or can be claimed by the Applicant.

Appellant also relied on 47 registrations of the marks TIFFANY or TIFFANY & CO. for such goods.

## Background

Ex parte prosecution was suspended in this case pending the result of Tiffany & Co. v. Tiffany Tile Corp., 345 F. 2d 214, 52 CCPA 1396 (1965) (hereinafter referred to as "the ceramic tile case"). There, the same appellant had opposed the registration of a mark for ceramic tile consisting of the words "Tiffany Tile" and a jewelled-crown design used to dot the "i" in the word "Tiffany." The board dismissed the opposition, and we reversed, saying:

> There can be no doubt that Tiffany & Co. has for many years enjoyed an enviable reputation for the good taste and quality of its products, and is entitled to appropriate protection in the market place. While motives for appropriating the Tiffany mark here can hardly be said [to be] decisive of confusing similarity issues, they are not to be ignored. Appellee's incorporation of a jewelled crown and its general advertising formats are hardly in harmony with its alleged reason for appropriating Tiffany for its tiles.

> We are not here dealing with such diverse products as bulldozers and cosmetics but with products that are, in the main, decorative in nature and appeal, made from the same basic material, and normally found and used in homes. Under such circumstances, we are satisfied that the average purchaser seeing such a well known mark as "Tiffany" on the involved goods would be likely to assume they emanated from the same source.

The examiner treated the holding in the ceramic tile case as binding, though he conceded that "the goods of this application * * * are not of the same basic material [as the "goods of the decision"] * * *." The board reversed, 153 USPQ 648 (1967), on the grounds (1) that the goods of the par-

ties here are not of the "same basic materials," as they were in the ceramic tile case, (2) that it had not been shown that appellee's goods "are in the main decorative in nature," and (3) that it could not infer that appellee was attempting to capitalize on appellant's goodwill. Appellee's mark was thereafter published for opposition, and Tiffany & Co. opposed.

In its opinion in the opposition, the board relied on similar reasoning, although it referred to appellee's goods as "decorative" ceiling tiles and panels.[1] Additionally, it noted (1) that the surname "Tiffany" forms a part of the trade names of many businesses and has often been registered by third parties on a wide variety of goods, (2) that the parties' goods and their channels of trade are very different, and (3) that there had been no instances of actual confusion proved despite nearly twenty years of simultaneous and extensive use. It is interesting to note that the board's opinion does not mention appellee's alleged reason for having adopted the mark TIFFANY for its ceiling tiles, hereinafter discussed.

## OPINION

Appellee quotes numerous dictionary definitions supporting its contention that the common noun "tiffany" means a type of gauze, formerly of very thin silk but now commonly of muslin, and it argues that the evidence concerning its advertising practices prove that it "has used the term TIFFANY to suggest a fabric texture type of surface or finish on its wood fiber, low density, ceiling tile and ceiling grid panels." There are numerous holes in this argument. In the first place, the description of the goods in its application does not recite

that the tiles and panels on which the mark is used have a fabric-texture surface finish, and we can accordingly give no weight in this *registration* proceeding to any such alleged property of the tiles and panels actually sold to date under the mark. Community of Roquefort v. Santo, 443 F.2d 1196, 1198, 58 CCPA 1303, 1305 (1971). In the second place, appellee's advertising has actually likened the surface on its TIFFANY tiles and panels to linen, not to tiffany gauze made from silk or muslin. In the third place, appellee has presented *no* evidence that the average purchaser of its goods would be aware of this rather obscure meaning of the word "tiffany," while appellant has presented ample evidence of the unquestionable fame of its name and trademark. Finally, appellee for years used the mark TIFFANY on tiles the finish of which did not in the least resemble fabric in texture or appearance before it began using the mark on tiles and grid panels the finish of which arguably looks somewhat like fabric. As we said in the ceramic tile case, "While motives for appropriating the Tiffany mark here can hardly be said [to be] decisive of confusing similarity issues, they are not to be ignored," 345 F.2d at 215, 52 CCPA at 1397, and here as there we find the subsequent adopter's explanation for its selection of the famous mark to be thin indeed.[2]

Appellee next argues that

Wherever Appellee uses the term TIFFANY throughout its literature and labels, exemplified by its aforementioned exhibits, this term is displayed in simple block letters.. In such form its registration was sought (R 13); and it was so published for opposition (Appendix I).

---

1. This change in the board's rationale was probably due to the fact that appellee's answer to appellant's notice of opposition admitted appellant's sixth averment, which was as follows:

    6. Upon information and belief the ceiling tiles and grids of the Applicant have acoustical advantages and are advertised and promoted to a large degree by extolling their decorative characteristics.

2. In the ceramic tile case, appellee's president testified that he had gotten the idea of using the trademark TIFFANY from reading the famous treatise on real property by Herbert T. Tiffany.

Actually, this argument somewhat misstates what appellee's application consisted of. The application showed the word "Tiffany" typed in capital letters, and the legal effect of such a registration under Rule 2.51(d) of the Trademark Rules of Practice would be that appellee's rights would not be limited to the mark depicted in any special form. Thus, there is no reason to assume, as appellee would have us do, that the possibility of deliberately deceptive advertising is absent from this case. Compare Phillips Petroleum Co. v. C. J. Webb, Inc., 442 F.2d 1376, 58 CCPA 1255 (1971).

■ There are three points from the board's opinions on which we will comment briefly. First, the board relied on evidence consisting of third-party trademark registrations and pages from telephone books showing third-party use of trade names, both consisting of or including the word "Tiffany," and, since appellant failed to include this evidence in the transcript of record, we must assume that it proved what the board's opinion says it proved. In re Locher, 455 F.2d 1396, 1401, 59 CCPA ——, —— (1972). Nevertheless, we do not find this evidence controlling. Appellee did not prove, and we will not assume, either that the registered marks are in *continuing* use or that the trade names listed in the telephone books were in use prior to appellant's adoption of its mark. In re Helene Curtis Industries, Inc., 305 F.2d 492, 494–495, 49 CCPA 1367, 1371–1372 (1962).

Second, the board pointed out that there is no evidence that appellant sells any goods made from low density wood fiber, in contrast to the situation in the ceramic tile case, where appellant did have a registration on goods made from the "same basic material" as the goods on which appellee sought registration of the mark. However, under the Trademark Act of 1946, differences in the physical characteristics of the goods in question are not per se significant and must be regarded as only one, rather subordinate element in determining the question of likelihood of confusion. Vandenburgh, Trademark Law and Procedure (2d ed. 1968) § 5.41. Shawnee Milling Co. v. Sidney Wanzer & Sons, Inc., 390 F.2d 1002, 55 CCPA 957 (1968), cited by appellant, is a good example of a recent case in which we accorded little or no weight to such differences in the physical characteristics of the goods (ice cream and flour).

Finally, the board relied on the lack of evidence of actual confusion during some nineteen years of contemporaneous use. However, the record shows that both appellant and appellee have been expanding their operations under the mark over the years. Thus the probability of confusion stemming from continued simultaneous use is likely to increase, not decrease, in years to come, and Tiffany & Co., as the prior user of the mark, is entitled to continue using it as it expands and to be protected from the ever-increasing probability that actual confusion will arise.

■■ Appellee's strongest argument is that its wood-fiber, low density ceiling tiles and ceiling grid panels are "so foreign to the products of Appellant recited in its registrations that they do not possess common characteristics to suggest they emanate from the same producer source." Obviously, this is a closer case than the ceramic tile case was, since it would be less surprising to find an elegant store like Tiffany & Co. selling expensive ceramic tile than it would be to find it selling ordinary wood-fiber ceiling tile. Additionally, we agree with appellee that the Trademark Act of 1946 is not an anti-dilution statute, which means that it is possible to *register* marks the *use* of which may be subject to being enjoined. However, the question here is whether appellee's use of the trademark TIFFANY on its goods is likely "to cause confusion, or to cause mistake, or to deceive," 15 U.S.C. § 1052(d),[3] and, resolving any doubts we

---

3. Appellant based its opposition on both 15 U.S.C. § 1052(d) and 15 U.S.C. § 1052(a). However, we have held that, to "falsely suggest a connection with" an

might have in favor of the prior user and taking into account the fame of its mark, we are not persuaded that such confusion, mistake, or deception is not likely.

Accordingly, the decision of the board is reversed.

Reversed.

59 CCPA

opposer, "there would have to exist, at the very least, the same likelihood of confusion with" the opposer's mark (or trade name, we would now add) as is necessary under 15 U.S.C. § 1052(d). Morehouse Mfg. Corp. v. J. Strickland & Co.,

407 F.2d 881, 888–889, 56 CCPA 946, 955 (1969). Appellant has not really separated his arguments under the two provisions, and we have handled them as one.