**SARAH COVENTRY, INC.**

v.

**T. SARDELLI & SONS, INC.**

**Civ. A. No. 74–42.**

United States District Court,
D. Rhode Island.

April 14, 1975.

**348**

John R. Schovee, Rochester, N. Y., George M. Vetter, Jr., Providence, R. I., for plaintiff.

Herbert B. Barlow, Jr., Providence, R. I., for defendant.

## OPINION AND ORDER

PETTINE, Chief Judge.

The sole issue in this action arising under the trademark laws of the United States is whether or not there is "likelihood of confusion" between the trademarks "SARAH" of the plaintiff, who is the primary user, and the defendant's mark "SARDE".

The plaintiff owner of the trademarks "SARAH COVENTRY", "SARAH COV" and "SARAH", and of Registrations therefor issued by the United States Patent Office, seeks to reverse the decision of the Trademark Trial and Appeal Board which dismissed its opposition to the registration of "SARDE" as a trademark of the defendant. Sarah Coventry, Inc. v. T. Sardelli & Sons, Inc., 179 U.S.P.Q. 630 (P.O.TM. T. App. Bd. 1973) (hereinafter referred to by page number only). The plaintiff filed a notice of appeal to the United States Court of Customs and Patent Appeals, to which the defendant filed a "Notice of Election" pursuant to 15 U.S.C. § 1071. The case was then filed in the United States District Court for the Western District of New York and was subsequently transferred to the District of Rhode Island.

The plaintiff is a New York corporation with its principal place of business in Newark, New York, and the defendant is a Rhode Island corporation with its principal place of business in Providence, Rhode Island. Jurisdiction rests in this court as set forth in 28 U.S.C. § 1338(a) and 15 U.S.C. § 1071(b).

## FINDINGS OF FACT

The parties have stipulated that all of the testimony given before the U.S. Trademark Trial and Appeal Board in the trademark opposition from which this case arose shall have the same effect as if orally taken and produced before this court. In addition the following specific stipulations, which essential-

ly track the findings of the Trademark Board, 179 U.S.P.Q. at 630–631, were read into the record:

"This action results from a decision dated June 28, 1973 of the Trademark Trial and Appeal Board of the United States Patent Office in Opposition No. 52,293, filed in the United States Patent Office by plaintiff on October 7, 1971, in which decision the Trademark Trial and Appeal Board dismissed plaintiff's opposition to the registration of defendant's 'SARDE' trademark upon defendant's application Serial No. 386,658.

Plaintiff, Sarah Coventry, Inc. is a corporation duly organized and existing under and by virtue of the laws of the State of New York, having its principal place of business at 165 East Union Street, Newark, New York 14513.

Defendant T. Sardelli & Sons, is a corporation duly organized and existing under and by virtue of the laws of the State of Rhode Island, having its principal place of business at 195 Dupont Drive, Huntington Industrial Park, Providence, Rhode Island.

Defendant, T. Sardelli & Sons, Inc. has filed an application to register 'SARDE' as a trademark for jewelry, for personal wear and adornment, alleging use of the mark since November 1966.

Plaintiff, Sarah Coventry, Inc., on October 7, 1971 filed in the United States Patent Office an opposition against such registration on the basis of prior and continuous use of 'SARAH' and 'SARAH COVENTRY', both as tradenames and trademarks, and also of 'SARAH COV' as a trademark, all such tradenames and trademarks for use on and in connection with the sale of jewelry for men and women.

Plaintiff, Sarah Coventry, Inc., has been engaged in the direct selling of costume jewelry throughout the United States by the home party plan for more than twenty years under the name Sarah Coventry, Inc.

Plaintiff, Sarah Coventry, Inc., is the owner of:

(a) United States Patent Office Reg. No. 777,378, issued September 22, 1964 (SARAH); (b) United States Patent Office Reg. No. 636,452, issued October 30, 1956 (SARAH COVENTRY), and (c) United States Patent Office Reg. No. 726,242, issued January 9, 1962 (SARAH COV.), all for costume jewelry.

Plaintiff, Sarah Coventry, Inc., has, since a time prior to 1958, continuously used the designations 'SARAH COVENTRY' and 'SARAH COV' as trademarks for its costume jewelry. These marks have been imprinted or stamped on the jewelry. Metal tags have been affixed to the jewelry when the size of the piece precludes the use of the stamp or imprint method."[1]

"In 1958 plaintiff, Sarah Coventry, Inc., commenced using the name 'SARAH', per se, and the designation 'by SARAH' in its promotional literature as a corporate identification symbol and, over the years, greatly increased its use until currently it is the most significant word under which opposer promotes sales of its jewelry in national advertising, sales promotion literature, and sales catalogs. 'SARAH' appears in approximately ninety to ninety-five percent of its national advertising material.

Personnel of the plaintiff refer to the plaintiff's corporation as 'SARAH' per se.

Since at least as early as April 16, 1964, plaintiff has made use of 'SARAH' as a trademark for certain types of costume jewelry used for promotions or as prizes or gifts at the home parties. 'SARAH' has been stamped or imprinted on the jewelry and appears on cards on which the jewelry is mounted as well as on plastic bags in which the jewelry is packaged.

Plaintiff has extensively advertised and promoted its jewelry through national television programs and through advertisements in nationally distributed

---

[1]. As noted *infra*, the plaintiff in advertising displays its trademark in script, but stamps all its jewelry in block letters.

publications . . . In addition, plaintiff has distributed reprints of its magazine advertisements, . . . and similar material to its field representatives for use in selling its jewelry.

\* \* \* \* \* \*

Plaintiff's total annual advertising and promotional expenditures have increased from about five hundred thousand dollars for the fiscal year ending March 31, 1966 to over one million seven hundred and fifty thousand dollars for the fiscal year ending in 1971. Such expenditures for the first eleven months of fiscal year 1972 approximated one million seven hundred thousand dollars.

During the ten-year period ending March 31, 1971, plaintiff has had sales in the United States totalling about three hundred million dollars; and for the fiscal year ending March 31, 1971, opposer's sales alone were well above forty-seven million dollars, all of which were sold under the marks 'SARAH', 'SARAH COVENTRY', 'SARAH COV.', COV.'.

Plaintiff has rights in the marks 'SARAH COVENTRY', 'SARAH COV.', and 'SARAH' for costume jewelry prior to defendant's use of the trademark 'SARDE' and plaintiff possesses a substantial good will and hence a valuable property right in these marks.

The plaintiff, Sarah Coventry, Inc., is one of the largest merchandisers of jewelry in the world and is the world's largest, direct to the home, merchandiser of jewelry and plaintiff has many thousands of sales representatives in the United States selling and/or distributing to consumers the plaintiff's jewelry carrying the trademarks 'SARAH', 'SARAH COV.', and 'SARAH COVENTRY', and showing the prospective customers advertising literature carrying said trademarks.

Plaintiff Sarah Coventry, Inc., has from at least as early as April 6, 1964 been engaged in the business of selling and distributing to customers in interstate and intrastate commerce jewelry bearing the trademark 'SARAH', and plaintiff has never abandoned and is still using this trademark by applying the trademark to the containers for the goods which has been sold and used extensively.

Defendant is engaged in the manufacture of fourteen-karat gold pierced earrings, pendants and pins which it sells throughout the United States to wholesale distributors who, in turn, sell to independent and chain retail jewelers and to department stores.

The mark 'SARDE' was taken from the alleged nickname of defendant's president, Edmund Sardelli, and was first used as a part of the phrase 'by SARDE' on earring cards in or after May 1964 and prior to November 1966, alleged to be the date of first use in defendant's application. Defendant has since used the term 'SARDE' and, more frequently, 'by SARDE', as a trademark to identify its earrings on earring cards, displays associated with the goods sold for use in retail outlets, catalog sheets, and on gummed labels affixed to the earring cards and to boxes containing the earrings.

Defendant's advertising efforts have been somewhat minimal comprising occasional advertisements in Jewelers' Circular Keystone and Modern Jeweler magazine and the distribution or furnishing of ad mats for use in local newspaper advertising. Defendant's sales of its products under the mark 'SARDE' are in excess of one million dollars a year at wholesale price.

The products of both the parties comprise jewelry and include the identical items, namely, earrings and pendants, both parties' jewelry is of a type that would be sold in the same retail outlets such as department stores and jewelry stores and possibly in or near the same departments, and certainly would be purchased by the same classes of female customers.

If the court finds that the trademark 'SARAH' and 'SARDE' are in fact similar then the rest of the circumstances can exist so that if the jewelry products

of the parties were sold purchasers could well ascribe them to a common source or producer."

In addition to these stipulated facts it was established in this court that the marks "SARDE" and "SARAH" are used and displayed in script form as follows:

*Sarah*

*Sarde*

The plaintiff also introduced testimony in an attempt to show that both these trademarks have phonetic similarities especially when spoken with a southern drawl. The court witnessed a rather strange linguistic exercise by a witness who conceded his ineptitude as an imitator. It convinced me that the thrust of the plaintiff's case must come from the visual impressions left by the marks on viewers as they appear in script form. Conceding there may be no single way to pronounce either "SARAH" or "SARDE", I nevertheless find the plaintiff's efforts to prove there is a likelihood of confusion as to the sonant effect in uttering "SARAH" and "SARDE" were unimpressive.

## CONCLUSIONS OF LAW

In dismissing the plaintiff's opposition to the defendant's application to register "SARDE" as a trademark, the Trademark Trial and Appeal Board (hereinafter "the Board") found that ". . . the differences between 'SARDE' and 'SARAH' are sufficient to obviate a likelihood of purchasers ascribing the jewelry products of the parties to a common source." 179 U. S.P.Q. at 632.

The litigants agree that this finding represents the sole issue before the court. The defendant argues that unless plaintiff can establish error in the Board's finding by evidence which in character and amount carries thorough conviction, the court is bound to accept the Board's finding on this issue. It cites as basic precedent the Supreme Court's decision in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894).

While plaintiff does not dispute that the standard recited in Morgan v. Daniels, *supra*, is normally applicable to Board review proceedings brought in federal district court pursuant to 15 U. S.C. § 1071, it contends this proceeding is unique, in that the defendant, after availing itself of the statutory right to have plaintiff's appeal dismissed from the United States Court of Customs and Patent Appeals (hereinafter "Patent Appeals Court"), and thus removed to district court for a trial *de novo*, has in fact offered no new evidence. But for the defendant's action, the case would have been heard by the Patent Appeals Court, which is comprised of experts in the area of trademarks. Since it contends that the Patent Appeals Court would have engaged in a less deferential and far more open-ended review of the Board's decision than that permitted the district court under the "thorough conviction" test, for the district court to apply such a restrictive test in these circumstances would clearly prejudice plaintiff's right of appeal. Plaintiff argues that "the Board of Appeals in trademark cases are [*sic*] very frequently reversed . . . simply on the basis of the Appeal Court's *own independent judgment* of the question of whether these marks are confusingly similar." (transcript at p. 33; emphasis added). In support of its position that the standard applied by the Patent Appeals Court, and which this court should apply, entails an independent reassessment of the facts before the Board, plaintiff

cites as typical the Patent Appeals Court's decisions in Carlisle Chemical Works v. Hardman and Holden, Ltd., 434 F.2d 1403, 58 CCPA 751 (1970),[2] Geigy Chemical Corp. v. Atlas Chemical Ind., Inc., 438 F.2d 1005, 58 CCPA 972, (1971),[3] and Tiffany and Co. v. National Gypsum Co., 459 F.2d 527 (C.C.P.A. 1972),[4] and argues that they stand for the proposition that the court should reverse the Board's decision if I have any doubt as to the likelihood of confusion, because it must be resolved in favor of the prior user.

2. In *Carlisle*, the court stated, *supra* 434 F.2d at 1405:

> "A careful review and analysis of the record persuades us that the decision of the board dismissing the opposition constitutes reversible error. There is no dispute as to first use. Appellant's extensive advertisement and its use of ZIRCO antedates appellee's use of COZIRC by approximately twelve years. It is well settled that one who adopts a mark similar to the mark of another for closely related goods acts at his peril and *any doubt there might be must be resolved against him*. United Merchants and Manufacturers, Inc. v. R. A. Products Inc., 404 F.2d 399, 56 CCPA 751 (1968).
>
> \* \* \* \* \*
>
> We deem it pertinent to point out that the instant setting is not one where the goods of the parties are displayed or sold in side-by-side relationship where the purchaser is afforded an opportunity for comparison of the marks. It is more likely that purchasers will rely on memory and impressions. Human memories even of discriminating purchasers, technicians, etc., are not infallible.
>
> \* \* \* \* \*
>
> . . . Appellee had a wide range of potential marks from which to make a selection and chose one which contains the essentially identical syllables of appellant's mark, arranged in reverse order
>
> \* \* \* \* \*
>
> For the foregoing reasons, the decision of the board is *reversed*." (Emphasis added).

3. In *Geigy*, the Patent Appeals Court appears to have rejected the Board's subjective analysis and substituted its own, stating, *supra*, 438 F.2d at 1007:

> "The board appears to have been concentrating on a side-by-side comparison When *so* compared, we might come to a similar conclusion but what the statute prescribes as the test is whether the

I disagree. There may be a dichotomy as to the standard of review between the Court of Customs and Patent Appeals and the United States District Court. If so, it is quite understandable because the judges of the Patent Appeals Court, being experts in the field, may indeed be better equipped to reevaluate the entire record. However, I need not reach this question because there can be no doubt that the appropriate standard of review for the United States District Courts is firmly established. It has been expressed in the following

> marks *so resemble* one another *as to be* likely to cause confusion or mistake, and this requires us to consider, among other things, the fallibility of memory over a period of time, not merely whether one can distinguish the marks at a given moment.
>
> \* \* \* \* \*
>
> . . . We feel there is a reasonable likelihood . . ., by reason of the similarity of the marks, [of confusion] . . . Since reliance may be placed on fallible memory of the sound or appearance of a trademark, as distinguished from a generic name, we feel there should be a clearer distinction than exists here.
>
> Both sides have, of course, cited many prior decisions on other marks which, as usual, we find of little help. In the end, it is a subjective opinion. Our considered judgment that there is reasonable likelihood of confusion and mistake as to both product and source could be supported by citation of many precedents in which there were even greater differences between the marks than exist here. It goes without saying that if there were any doubt about likelihood of confusion, it must be resolved in favor of the prior user. Appellant has persuaded us that the board erred and we therefore *reverse*." (Emphasis in original) (footnote omitted).

4. In *Tiffany*, the court ruled, *supra*, 459 F.2d at 530:

> "Finally, the board relied on the lack of evidence of actual confusion during some nineteen years of contemporaneous use. However, the record shows that both appellant and appellee have been expanding their operations under the mark over the years. Thus the probability of confusion stemming from continued simultaneous use is likely to increase, not decrease, in years to come, and Tiffany & Co., as the prior user of the mark, is entitled to continue using it as it expands and to be protected from the ever-increasing probability that actual confusion will arise."

statements which represent nothing more than variations on the same theme:

> "The decision of the Commissioner is not binding . . . but is . . . of great weight." Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., Inc., 55 F.Supp. 308 (D. Mass.1944).

> \* \* \* \* \* \*

> "The burden rests on appellant *to show manifest error* in the decision of the Patent Office Tribunal and that of the lower court." Solventol Chemical Products v. Langfield, 134 F.2d 899, 901 (6th Cir. 1943) (emphasis added).

> \* \* \* \* \* \*

> "In seeking to compel the Commissioner of Patents to grant registration of a trademark, plaintiff has the burden of proof[,] [citations omitted] and furthermore, the plaintiff must show by *clear and convincing evidence* that the Commissioner's decision was erroneous and that plaintiff was entitled to register the disputed trademark." Radiator Specialty Company v. Ladd, 218 F.Supp. 827, 829 (D.D.C. 1963) (emphasis added). *See also* The Durox Company v. Duron Paint Manufacturing Company, Inc., 320 F. 2d 882 (4th Cir. 1963).

> \* \* \* \* \* \*

> "Although an action under sec. 1071 is a trial *de novo* the findings of the administrative agency are entitled to considerable weight and should not be rejected in the absence of *convincing evidence* that the agency was wrong, particularly where as here, no new evidence has been introduced at the trial in this court. [citations omitted]." Wilco Company v. Automatic Radio Manufacturing Company, Inc., 255 F. Supp. 625, 627 (D.Mass.1966) (emphasis added).

> \* \* \* \* \* \*

> "This Court agrees with the law on the subject as stated in the recent case of Huntington National Mattress Company v. Celanese Corporation, D. C., 201 F.Supp. 938, '[w]here a plain-

tiff seeks to set aside the findings of the Board, *his burden is not to be sustained by a mere preponderance of the evidence, but he must show by clear and convincing evidence that the decision is erroneous.*'" Aloe Creme Laboratories, Inc. v. Texas Pharmacal Company, 213 F.Supp. 125, 127 (W.D. Tex.1963) (emphasis added).

> \* \* \* \* \* \*

> "The civil action before the District Court is intended to be a trial *de novo*, though the decision of the Patent Office must be accepted as controlling on issues of fact unless the contrary is established by testimony *which in character and amount carries thorough conviction.*" Wilson Jones Company v. Gilbert & Bennett Manufacturing Company, 332 F.2d 216, 218 (2d Cir. 1964) (emphasis added).

In Watkins Products, Inc. v. Sunway Fruit Products, 311 F.2d 496 (7th Cir. 1962), Judge Duffy, writing for the majority, noted that the role of a district court is more limited in trademark cases arising in the Patent Office then in those originating in the district court. He cited Esso Standard Oil Company v. Sun Oil Company, 97 U.S.App.D.C. 154, 229 F.2d 37 (1956) as authority for the distinction and for the controlling standard to be applied by the district court.

> "The applicant brought suit in the District Court to review the Patent Office decision. The District Court there, as here, disagreed with the Patent Office and *substituted* its own findings for the crucial fact of confusing similarity. The Court of Appeals reversed saying, 229 F.2d at page 40: '\* \* \* In patent and trademark cases under Rev.Stat. § 4915 [now 15 U.S.C. § 1071] *a finding of fact by the Patent Office as to priority of invention or confusing similarity of marks must be accepted as controlling, unless the contrary is established by evidence "which, in character and amount carries thorough conviction.*" Morgan v. Daniels, 1894, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L. Ed. 657 (citing additional cases). As

we pointed out in Abbot v. Coe, 1939, 71 App.D.C. 195, 197, 109 F.2d 449, 451, *a mere preponderance of the evidence is not sufficient* with regard to invention; the Patent Office finding must be accepted if it is "consistent with the evidence," the Patent Office being an expert body pre-eminently qualified to determine questions of this kind.'" Watkins Products, Inc., *supra*, 311 F.2d at 498–499 (emphasis added).

■■ From these cases, representative of the established law, it follows that the *de novo* hearing before the district court is confined by clearly defined interpretative strictures as to the facts. When no new evidence is presented in district court, the court simply reviews the naked proceedings before the Board, paying due deference to the lower tribunal's findings and reversing only if there is *clear error* in fact or error in law. When the parties elicit and introduce additional evidence before the district court to strengthen their respective positions, the district court must then apply the "thorough conviction" standard. Royal Crown Cola Co. v. Crown Beverage Corporation, 195 F.Supp. 130 (E.D.N.Y.1961). *See also* cases cited *supra*.

Furthermore, even assuming *arguendo* that the standard of review employed by the Patent Appeals Court differs from the foregoing test, I am not persuaded by plaintiff's argument that the district court must therefore apply the Patent Appeals Court test. Despite the pragmatic appeal and ingenuity of the plaintiff's argument, which focused on the expertise of the Court of Customs and Patent Appeals, it mischaracterizes the normal review procedures contemplated by Congress in enacting the present law. Subsection (a)(1), 15 U.S.C. § 1071, states that an aggrieved party who has the right to appeal the Board's decision may appeal to the Patent Appeals Court, but in so doing waives his right to proceed under subsection (b), i.e., to seek review in the United States District Court. This same section further reads

that "such appeal [to the Court of Customs and Patent Appeals] shall be dismissed if *any* adverse party to the proceeding" (emphasis added) timely seeks review in the district court.

From the foregoing, it seems clear it is the rule rather than the exception to proceed in the United States District Court. The plaintiff's "to do" that no new evidence was introduced in this court by the defendant is of no consequence. The almost vituperative argument by the plaintiff's counsel that such a tactic is an acknowledgment of the defendant's tenuous position which would have been perceived by the Patent Appeals Court is of no legal significance, and his lament that he was denied the opportunity to have his case heard "before the most preeminent body in this country on trademark law" is unwarranted. The plaintiff's position may excite a sympathetic note in its logic but it lacks legislative support.

Within the restraints of its reviewing authority, the guideline criteria of *Carlisle, supra, Geigy, supra,* and *Tiffany, supra,* may, of course, be used by the district court. With this directional focus and the proper standard of review in mind, I must reject the plaintiff's opposition to registration of defendant's trademark. The Trademark Trial and Appeal Board carefully reviewed the facts. I quite agree with its conclusion that:

> "Opposer has engaged in an exercise of what might be called phonetic mental gymnastics with its witnesses and in the cross examination of applicant's witnesses in an attempt to demonstrate that 'SARDE' could in some fashion or other be pronounced somewhat like 'SARAH'. This was, in our opinion, an exercise in futility which resulted in a pulling and tugging struggle with applicant's witnesses that did not serve any useful purpose in resolving this question." 179 U.S.P.Q. at 632, n.2.

■ As to the visual appearance of the two marks, both as to the sheer spelling and as used in script form, the

Board took into consideration all of the plaintiff's contentions and concluded:

"While the marks 'SARDE' and 'SAR-AH' are five-letter terms with the identical initial three letters, and the marks have been used by the parties in script form and preceded by the designation 'by', the marks as a whole do not project the same commercial image or impresssion. That is, 'SARDE' does not look like 'SARAH'; 'SARDE' would not generally be pronounced like the popular and well-known name 'SARAH', and whether 'SARDE' would suggest a surname or a given name, it does not, in any way, suggest 'SARAH'.

It is therefore concluded that the differences between 'SARDE' and 'SAR-AH' are sufficient to obviate a likelihood of purchasers ascribing the jewelry products of the parties to a common source." 179 U.S.P.Q. at 632 (footnote omitted).

Within the teachings of the many precedents cited in this opinion, I find *no clear error in the Board's decision.* As to the evidence presented to this court, which can hardly be termed new evidence, it falls far short of the "thorough conviction" standard.

The testimony of the defendant's president, Edmund Sardelli, clearly established that "SARDE" was derived from his own name in good faith and "was first used as a part of the phrase 'by SARDE' on earring cards in or after May 1964 and prior to November 1966."

As against this the "SARAH" mark has been used from "as early as April 6, 1964." However, there is no evidence that because "SARAH" was extensively used an inference can be drawn that the defendant should have known of it. *Compare* LaTouraine Coffee Co. v. Lorraine Coffee Co., 157 F.2d 115, 118 (2d Cir. 1946), where there was an inference that the defendant must have known of the plaintiff's mark.

Mr. Barry Meath, Vice-President of Marketing for Sarah Coventry, added little of value in telling us of "SAR-AH's" extensive operations, and the importance in the use of the name "SAR-AH" so that people, "will recognize it when our people call at their door", since their jewelry, "can only be sold in the home and be purchased through one of [their] sales people [and that] if there is any confusion that it might be available in the stores, then, it could cause confusion in [their] field organization". (tr. p. 57).

The short answer is there is no likelihood of confusion. And I hasten to add that even taking the plaintiff's position that this *de novo* hearing requires me to make an independent evaluation of all the evidence and decide the question of likelihood of confusion as one of law, I come to no other conclusion.

The plaintiff's complaint is dismissed and it is hereby

ORDERED

that the Commissioner of Patents and Trademarks issue to the defendant a registration on its application which is numbered 386,658.

So ordered.