55 CCPA

**FORMICA CORPORATION, Appellant,**

v.

**The NEWNAN CORPORATION,**
**Appellee.**

**Patent Appeal No. 7991.**

United States Court of Customs
and Patent Appeals.
June 20, 1968.

James Edwin Archer, Stamford, Conn., Daphne Leeds, Washington, D. C., August G. Maron, Jr., Wayne, N. J., for appellant.

J. Harold Kilcoyne, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,[*] Judges.

ALMOND, Judge.

Formica Corporation appeals from the decision of The Trademark Trial and Appeal Board dismissing its opposition to the application [1] of the Newnan Corporation to register "NEW-MICA" for

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 115,937 filed March 17, 1961.

decorated laminated surfacing material for use as table tops, counter and sinkboard surfacing and the like, asserting use since August 26, 1960.

Appellant (opposer) is the registrant of the mark "FORMICA" for laminated sheets of wood, fabric or paper impregnated with synthetic resin and consolidated under heat and pressure for use on table tops, furniture and wall paneling,[2] for plastic wall tile,[3] and for adhesive for bonding laminated plastics to other surfaces such as wood.[4]

The record shows that appellant has, for many years prior to appellee's asserted use of NEW-MICA, continuously used FORMICA as a trademark for a decorative laminated material which is sold in sheet form for use as a surface covering for walls, furniture, counter tops, kitchen cabinets, and the like. Its FORMICA product has been marketed throughout the entire United States, with sales for the years 1955 through 1964 approximating four hundred million dollars, and advertising expenditures ranging from $1,275,000 in 1956 to about $3,000,000 in 1963. Appellant's advertising media include consumer magazines, trade periodicals, television and the sponsorship of an exhibit at the 1964 New York World's Fair showing the many applications for its products. Its products are sold through distributors to architects, builders, building suppliers, interior decorators, furniture manufacturers, fabricators of cabinets, counter, table, sink and bar tops, and to the public generally.

In August 1960, appellee commenced using NEW-MICA on decorative laminated plastic sheets. The products were offered for sale through the same trade channels to the same types of purchasers as were appellant's products. The vice-president of Newnan testified that appellant's product sold under the mark FORMICA was the most widely advertised of all the decorative laminated plastic surfacing and that it had knowl-

edge of appellant's mark at the time it adopted NEW-MICA.

█ The sole issue here is whether NEW-MICA so resembles FORMICA when applied to the same goods, moving through the same trade channels to the same ultimate purchasers, as to be likely "to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d).

The board, noting that appellee had introduced a large number of documentary exhibits, found that:

> * * * it is abundantly clear therefrom that in numerous advertisements of kitchen cabinets and other articles made from laminated plastic materials the term "MICA" has been used as a descriptive name for such materials; that persons other than opposer have adopted marks comprising the term "MICA" for laminated plastic materials and/or products made therefrom; and that the term "MICA" forms a component part of the trade names of numerous concerns specializing in the fabrication of kitchen cabinets and other articles from laminated plastic materials.

Predicated on this finding, the board concluded:

> Considering the frequent adoption by others in the trade of marks and trade names comprising the term "MICA," and the frequent use of the term in advertisements of kitchen cabinets and other articles as a descriptive name for the laminated plastic materials used in the manufacture thereof, it is our opinion that applicant's use of "MICA" as a part of its mark is not reasonably calculated to cause confusion or mistake or to deceive, or to suggest to purchasers that applicant's "NEW MICA" product is a new "FORMICA" product.

Although appellant argues that the board had an insufficient factual basis for its finding that MICA had become

2. Reg. No. 421,496 issued June 4, 1946.

3. Reg. No. 700,435 issued July 5, 1960.

4. Reg. No. 698,357 issued May 31, 1960.

a descriptive name for laminated plastic materials, we do not find it necessary to address ourselves to that question. Our inquiry is directed solely to the likelihood of confusion of the marks when taken as a whole and applied to the goods in question.

It does seem likely to us that use of the mark NEW-MICA will lead some purchasers to the conclusion that the laminate they are buying is new FOR-MICA, the most widely known of the plastic laminate materials.

■ As long ago as 1910, the Court of Appeals of the Second Circuit said: "It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of his competitors, that the courts look with suspicion upon one who in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them." Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73 (2nd Cir. 1910). Where the late-comer chooses a mark which so much as raises reasonable doubts about the likelihood of confusion with an established mark, those doubts will be resolved in favor of the first user. United States Time Corp. v. Tennenbaum, 267 F.2d 327, 46 CCPA 895.

The trademark FORMICA, through aggressive and expensive merchandising, has become widely known. The owners of the mark deserve to have the good will which they have acquired protected from appropriation by the adoption of a mark so close to theirs as is the one before us and which seems to us so likely to mislead purchasers as to the source or origin of the product on which it is used.

The decision of the Trademark Trial and Appeal Board is reversed.

Reversed.