58 CCPA

**CARLISLE CHEMICAL WORKS, INC.,**
Appellant,

v.

**HARDMAN & HOLDEN LIMITED,**
Appellee.

Patent Appeal No. 8412.

United States Court of Customs
and Patent Appeals.

Dec. 17, 1970.

Eugene Sabol, Washington, D.C. (Fisher, Christen, Sabol & Caldwell, Washington, D. C.), attorney of record, for appellant.

Appellee submits on record.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

Carlisle Chemical Works, Inc. (hereinafter appellant) appeals from the decision of the Trademark Trial and Appeal Board, 157 USPQ 389, dismissing its consolidated oppositions to the applications of Hardman & Holden Limited (hereinafter appellee) to register the mark "COZIRC" for driers for paints and varnishes[1] and for chemical compounds of cobalt and zirconium used as catalytic oxidative driers in paints.[2]

Appellant opposed registration in each instance on the basis of its ownership of the mark "ZIRCO" for catalytic agents used in the manufacture of drier compositions.[3] The proceedings below were consolidated and proceeded on a single record, with both parties taking testimony.

The record reveals that appellant has used the mark ZIRCO through its predecessor, Advance Solvents and Chemical Division, on zirconium salts of carboxylic acids for use as a paint and ink drier catalyst since as early as 1952. Appellant's goods are sold in drums to the paint industry, where they are further combined with cobalt, manganese or calcium salts to form a drying additive for paints. The ZIRCO drier catalysts are advertised in such trade publications as American Paint Journal and Paint Industry Magazine, as well as in catalogs and brochures directed to the paint industry. The advertising, as well as the trade literature employed, stresses the fact that appellant's compound contains 6% zirconium metal. The record further reveals that appellant's products are sold by technically trained salesmen to trained buyers in the paint or kindred industries using drier catalysts. Appellant has expended approximately $180,000 in advertising its drier catalysts, with annual sales exceeding $100,000.

Appellee, a British corporation, has been selling catalyst driers for paints and inks for many years. It has been using the mark COZIRC and/or CO-ZIRC 69 on compounds of zirconium and cobalt for use as driers for paints and similar goods since 1964. Its area of outlets includes Great Britain, France and South Africa. Like appellant's,

---

1. Serial No. 221,175 filed June 15, 1965.

2. Serial No. 221,174 filed June 15, 1965.

3. Reg. No. 619,263 issued January 17, 1956 to predecessor in title.

these products are sold by technically trained salesmen to skilled buyers in the paint and allied industries. In its advertising, appellee uses British technical journals, such as the Paint, Oil and Colour Journal, and sales brochures. It appears that appellee has known of appellant's operations and activities for approximately ten years.

It is appellant's position that a likelihood of confusion would ensue inasmuch as appellee's mark COZIRC is in material substance a reversal of the syllables of appellant's mark ZIRCO, that both marks are used in paint driers for sale to paint manufacturers, and that both are designed and intended to convey the information to the customer that the paint additives contain zirconium.

Appellee, submitting here on the record, contended below that the marks differ in sound, appearance and connotation and that the products are different in their structure and use and are sold to technically trained persons who would readily distinguish between the marks.

In dismissing appellant's opposition, the board found appellee's position supported by the record. The board took the position that while it may be true as a general rule that confusion may not be avoided by merely reversing the elements of the mark of another, this principle is not applicable where the goods are purchased by trained personnel who would recognize that appellant's mark "is a foreshortening of the generic term 'zirconium' while appellant's mark is a play on 'cobalt' and 'zirconium'." The board found "little distinction between the goods," observing, however, that purchasers would be aware of the fact that appellee's products are drier additives, per se, and appellant's products are further combined with other elements to create an additive.

Pursuant to the foregoing rationale, the board concluded:

Considering the highly suggestive nature of opposer's mark as applied to its goods, the differences between the marks, and the fact that the products of both parties are both designed to be sold to technically trained purchasers, it is concluded that there would be no likelihood of confusion or mistake. cf. National Machinery Company v. Peltzer & Ehlers Kommandit Gesellschaft, 145 USPQ 616 (TT&A Bd., 1965); and cases cited therein.

■ A careful review and analysis of the record persuades us that the decision of the board dismissing the opposition constitutes reversible error. There is no dispute as to first use. Appellant's extensive advertisement and its use of ZIRCO antedates appellee's use of COZIRC by approximately twelve years. It is well settled that one who adopts a mark similar to the mark of another for closely related goods acts at his peril and any doubt there might be must be resolved against him. United Merchants and Manufacturers, Inc. v. R. A. Products, Inc., 404 F.2d 399, 56 CCPA 751 (1968).

■ Addressing attention to the goods of the respective parties, we find from the record that there are no substantial differences in the channels of trade through which the competing goods would move or the class of purchasers to whom they would be sold; they are similarly packaged in drums; they are sold to the same class of purchasers, viz., paint and ink manufacturers; they have substantially the same uses, that is, as catalytic additives to paint and ink to impart or improve drying capabilities; they both contain zirconium salts of carboxylic acids; in both zirconium is the principal active ingredient; their function is substantially similar in that the zirconium compound acts to catalyze a primary drier such as a cobalt drier; both are designed as replacements for lead driers; both are offered for sale for use in leadfree paints, and both are offered for sale as replacements for cobalt driers, even though ZIRCO is a partial replacement for cobalt.

With respect to the marks of the parties, they are substantially similar, the

difference being in a reversal of syllables which are essentially the same. Except for the reversal of syllables, the marks are similar in sound and appearance. It seems reasonable that if any connotation or meaning is to be ascribed to the marks and their syllabic components, it would be the same, namely, "ZIR" or "KIRC" designating zirconium and "CO" designating cobalt. Additionally, both marks are used and advertised in block form.

We are of the view that the board relied too heavily on the acuity and expertise of the average technical personnel. We are persuaded that the record is at least just as convincing that such purchasers would be likely to conclude that the same manufacturer is the source of ZIRCO catalytic agents and COZIRC catalytic driers. As has been pointed out, appellee's catalyst is designed to promote the drying properties of paint. The same is precisely true relative to appellant's goods. Both are catalytic additives containing zirconium compounds. As noted, the board took the view that trained personnel would recognize that appellee's mark "is a play on 'cobalt' and 'zirconium,'" doubtless relying on the syllable "CO" in COZIRC. Appellant's mark also contains the syllable "CO." We believe that it would be just as reasonable to assume that the "CO" in appellant's mark would carry the same connotation to the same purchasers especially considering the fact that the record reveals appellant's widely advertised recommendations to use ZIRCO in conjunction with cobalt driers.

We deem it pertinent to point out that the instant setting is not one where the goods of the parties are displayed or sold in side-by-side relationship where the purchaser is afforded an opportunity for comparison of the marks. It is more likely that purchasers will rely on memory and impressions. Human memories even of discriminating purchasers, technicians, etc., are not infallible. The only difference between the respective products is that COZIRC contains cobalt while ZIRCO does not. As pointed out by appellant, this is an age of improvement products and convenience products. We think it probable that even discriminating purchasers would be likely to assume that COZIRC is another product of appellant which may be used without the addition of a cobalt drier. This conclusion is enhanced by the fact that since 1952 appellant has continuously informed the trade that ZIRCO drier catalysts are effectively used with cobalt driers. It would seem reasonable for the purchaser to assume that COZIRC could well be considered a convenience product to supplement the ZIRCO product where a cobalt drier is desired as an element of the product rather than an additive. The situation here presented is embraced by the observation of this Court in Wincharger Corporation v. Rinco, Inc., 297 F.2d 261, 49 CCPA 849 (1962):

It is true that in most instances technicians would use the products of either party and they are a discriminating group of people but that does not eliminate the likelihood of purchaser confusion here. Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as similar as those here in issue, and cover merchandise in the same general field.

The record discloses that appellee was fully apprised of appellant's mark for approximately eight years prior to adopting the mark COZIRC in March of 1964. Appellee had a wide range of potential marks from which to make a selection and chose one which contains the essentially identical syllables of appellant's mark, arranged in reverse order. In Formica Corp. v. Newman Corp., 396 F. 2d 486, 55 CCPA 1232 (1968), this court stated:

As long ago as 1910, the Court of Appeals of the Second Circuit said: "It is so easy for the honest business man who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and cover-

ings which by no possibility can cause confusion between his goods and those of his competitors, that the courts look with suspicion upon one who in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them." Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73 (2nd Cir. 1910).

For the foregoing reasons, the decision of the board is reversed.

Reversed.