1/19/01

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE TTAB

Paper No. 15
Bottorff

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

**Trademark Trial and Appeal Board**
_____

In re Thomas H. Wilson
_____

Serial No. 75/285,881
_____

Andrew C. Wilson, Esq. for Thomas H. Wilson

Christopher S. Adkins,[1] Trademark Examining Attorney, Law Office 101 (Christopher Wells, Managing Attorney)
_____

Before Quinn, Bucher and Bottorff, Administrative Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

Applicant seeks registration on the Principal Register of the mark PINE CONE BRAND and design, as depicted below, for goods identified in the application, as amended, as "California standard packed containers of fresh oranges,

---

[1] Trademark Examining Attorney Adkins submitted the Office's supplemental appeal brief in this case, and thus is the Trademark Examining Attorney of record. A different Trademark Examining Attorney handled the prosecution of the application and the initial briefing on behalf of the Office.

lemons and grapefruits for wholesalers and storeowners."[2] Applicant has disclaimed the exclusive right to use the word BRAND and "the pictorial representation of fresh fruit" apart from the mark as shown.

The Trademark Examining Attorney refused registration on the ground that applicant's mark, as applied to applicant's identified goods, so resembles the mark PINE CONE, which is registered for "canned peaches, apples, stringless beans, lima beans, corn, sweet potatoes,

---

[2] Serial No. 75/285,881, filed May 5, 1997. Applicant alleges April 2, 1997 as the date of first use of the mark anywhere, and April 14, 1997 as the date of first use of the mark in commerce.

tomatoes, and tomato products,"[3] as to be likely to cause confusion, to cause mistake, or to deceive. See Trademark Act Section 2(d), 15 U.S.C. §1052(d).

When the refusal was made final, applicant filed this appeal. The appeal has been fully briefed, but no oral hearing was requested. We affirm the refusal to register.

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *See In re E.I. du Pont de Nemours and Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We turn first to the issue of whether applicant's mark and registrant's mark, when compared in their entireties in terms of appearance, sound and connotation, are similar or dissimilar in their overall commercial impressions. The

---

[3] Registration No. 200,845, issued January 27, 1925. Section 12(c) affidavit filed; Sections 8 and 15 affidavits accepted and acknowledged; third Section 9 renewal July 14, 1985. The registered mark is depicted in minimally-stylized lettering.

test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. *See Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106 (TTAB 1975). Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

Registrant's mark is PINE CONE, a designation which, on this record, appears to be wholly arbitrary as applied to the relevant goods. We find that the dominant feature in the commercial impression created by applicant's mark is, likewise, the arbitrary designation PINE CONE. The remaining, disclaimed elements of applicant's mark, i.e., the word BRAND and the illustration of pine cones and fresh fruit, do not add anything of significance to the commercial impression of applicant's mark. BRAND is devoid of source-indicating significance, the illustration of

fresh fruit merely describes the goods, and the illustration of pine cones merely reinforces the dominance of the arbitrary designation PINE CONE. In sum, we find that applicant's mark and registrant's mark, when viewed in their entireties, are quite similar in terms of appearance, sound, and connotation, and that they create essentially identical overall commercial impressions. These findings under the first *du Pont* evidentiary factor weigh in favor of a conclusion that confusion is likely.

We further find, under the sixth *du Pont* evidentiary factor, that there is no evidence of any third-party use of similar "PINE CONE" marks on similar goods, a fact which further supports our finding that PINE CONE is an arbitrary and strong mark entitled to a broad scope of protection.

Next, we shall determine "the similarity or dissimilarity of the established and likely-to-continue trade channels" for applicant's and registrant's respective goods, under the third *du Pont* evidentiary factor, and "the conditions under which and buyers to whom sales are made, i.e., 'impulse' vs. careful, sophisticated purchasing," under the fourth *du Pont* evidentiary factor. We note that applicant's identification of goods, as originally filed, was "fresh citrus fruit." Applicant subsequently amended the identification to read "California standard packed

containers of fresh oranges, lemons and grapefruits for wholesalers and storeowners." The purpose of the amendment was to clarify that applicant's citrus fruit is sold under applicant's mark only to the trade, i.e., to wholesalers and to retailers/storeowners, and not to the general consuming public. Applicant asserts that its fruit bears a different mark when it is offered for sale by retailers to the general public, i.e., applicant's "T.H. WILSON" mark. Accordingly, for purposes of our likelihood of confusion analysis, we assume that the relevant classes of purchasers for applicant's goods are limited to wholesalers and storeowners, and that they do not include the general purchasing public.[4]

The goods identified in the cited registration are "canned peaches, apples, stringless beans, lima beans, corn, sweet potatoes, tomatoes, and tomato products." This identification includes no limitation as to trade channels or classes of purchasers. Accordingly, we must presume that registrant's goods are marketed in all normal trade channels for such goods and to all normal classes of

---

[4] We reject the Trademark Examining Attorney's argument that the relevant classes of purchasers for applicant's goods include members of the general public shopping at "wholesale" or "club" stores such as Costco, Sam's Club and BJ's. Rather, we agree with applicant's argument that such purchasers essentially are retail consumers and that, as such, they are outside the ambit of applicant's amended identification of goods.

purchasers for such goods.  *See In re Elbaum*, 211 USPQ 639 (TTAB 1981).  We find that the normal trade channels and classes of customers for registrant's identified goods include wholesalers and retailers/storeowners, and that applicant's and registrant's trade channels and classes of purchasers therefore are identical, to that extent.  These overlaps in trade channels and classes of purchasers weigh in favor of a finding of likelihood of confusion, under the third and fourth *du Pont* evidentiary factors.

Applicant argues that wholesalers and storeowners, the relevant classes of purchasers in this case, are sophisticated and careful purchasers, under the fourth *du Pont* factor.  We will assume that this is true, notwithstanding the absence of any specific evidence in the record to support applicant's counsel's assertion (at page 6 of applicant's Supplemental Reply Brief) that sales of applicant's goods "involve significant amounts of money," and notwithstanding the fact that the "storeowner" purchasers of applicant's and registrant's respective goods must be deemed to include owners of small "mom-and-pop" stores, who would not necessarily be purchasing large and/or expensive quantities of the respective goods on a regular basis.

Thus, we find that the fourth *du Pont* factor weighs in applicant's favor in our likelihood of confusion determination. However, in view of our findings on the other relevant *du Pont* factors, as discussed elsewhere in this opinion, we also find that the sophistication and care of purchasers under the fourth *du Pont* factor is not controlling in this case, and that it does not render these purchasers immune to source confusion arising from use of these highly similar marks on these related goods. The Court's analysis of this issue in *In re Research and Trading Corp.*, 793 F.2d 1276, 1279, 230 USPQ 49, 50 (Fed. Cir. 1986) is appropriate here as well:

> That the relevant class of buyers may exercise care does not necessarily impose on that class the responsibility of distinguishing between similar trademarks for similar goods. "Human memories even of discriminating purchasers … are not infallible." *Carlisle Chemical Works, Inc. v. Hardman & Holden Ltd*., 434 F.2d 1403, 1406, 168 USPQ 110, 112 (CCPA 1970). Sophistication of buyers and purchaser care are relevant considerations, but are not controlling on this factual record.

Bearing in mind our findings as to the trade channels, purchasers and conditions of sale with respect to the respective goods identified in applicant's application and in the cited registration, we now turn to a determination,

under the second *du Pont* factor, of the similarity or dissimilarity between, and the nature of, those respective goods themselves. For purposes of our analysis under this factor, applicant's goods are, essentially, fresh citrus fruits,[5] and registrant's goods are canned fruits and vegetables, i.e., peaches, apples, stringless beans, lima beans, corn, sweet potatoes, tomatoes, and tomato products.

Applicant's and registrant's respective identifications of goods both include fruits. Applicant is correct in pointing out that its fruits are citrus fruits while registrant's fruits are not, and that its fruits are fresh while registrant's fruits are canned.[6] However, it is

---

[5] We have considered the other wording in applicant's amended identification of goods, i.e., "California standard packed containers" and "for wholesalers and storeowners," in connection with the third and fourth *du Pont* factors, *supra*. That additional wording does not pertain to the nature of applicant's goods, per se. It does, however, render moot applicant's argument that applicant's and registrant's goods are dissimilar because they are sold in different areas of supermarkets. That fact would be pertinent if retail consumers were the relevant class of purchasers; in this case, they are not. For the same reason, it is not particularly relevant (even assuming it is true) that applicant's and registrant's goods might not be complementary food items which would be purchased and used together by retail consumers, and applicant's argument to that effect accordingly is not persuasive in this case.

[6] We are not persuaded by applicant's argument that we should accord significant or dispositive weight to the fact that registrant's food products are "processed" while applicant's are not. The Court's dicta in *In re Mars, Incorporated*, 741 F.2d 395, 222 USPQ 938 (Fed. Cir. 1984), relied on by applicant, does not mandate such an analysis, nor has a "processed vs. unprocessed" distinction been dispositive in the past. *See, e.g., Midwest Biscuit Co. v. John Livacich Produce, Inc.*, 203

not necessary that the respective goods be identical or even competitive in order to support a finding of likelihood of confusion.  Rather, it is sufficient that the goods are related in some manner or that the circumstances surrounding their marketing are such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association or connection between the producers of the respective goods.  *See In re Melville Corp.*, 18 USPQ2d 1386 (TTAB 1991*); In re International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978).

The Trademark Examining Attorney has submitted ten third-party registrations in which the identifications of goods include both fresh fruits and canned fruits and/or canned vegetables.[7]  Although these registrations are not

USPQ 628 (TTAB 1979)(fresh strawberries, avocados and vegetables vs. cookies, crackers, macaroni, spaghetti, cakes and candy), a case which the Court cited with approval in *In re Mars, supra*. *See also In re Decombe*, 9 USPQ2d 1812 (TTAB 1988); *In re The Vim Corporation*, 161 USPQ 58 (TTAB 1969); *Gentry Canning Company v. Blue Ribbon Growers, Inc.*, 138 USPQ 536 (TTAB 1963); and *Francis H. Leggett & Co. v. Cowin and Ryan*, 69 USPQ 174 (Comm'r Pats. 1946).

[7] See especially Registration Nos. 2,127,407, 1,152,401, 1,109,594, 984,626, 856,109, 803,190, 715,869, 1,501,506, 1,369,602, and 1,568,638 combined with 1,334,608.  We have given little or no probative value to the remaining registrations made

evidence that the marks shown therein are in commercial use, or that the public is familiar with them, they nevertheless are probative evidence to the extent that they suggest that such goods are of a type which may emanate from a single source under a single mark. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co., Inc.*, 6 USPQ2d 1467 (TTAB 1988). Applicant has presented no evidence to the contrary.

We find this evidence sufficient to establish that applicant's fresh citrus fruits and registrant's canned fruits and vegetables, although not precisely identical, are nonetheless similar under the second *du Pont* evidentiary factor. Generally, the greater the degree of similarity between the parties' marks, the lesser the degree of similarity required in the parties' goods to support a finding of likelihood of confusion. Moreover, where, as here, the parties' marks are essentially identical in terms of their overall commercial impressions, there need be only a viable relationship between their respective goods in order to find that a likelihood of

---

of record by the Trademark Examining Attorney. Some of the remaining registrations are for "house marks" which cover a wide variety of food and non-food items. The remainder are registrations which indicate that the types of goods at issue here were included in their identifications of goods when the registrations were originally issued, but were deleted from the identifications by subsequent amendment.

11

confusion exists. *See In re Shell Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993)*; In re Concordia International Forwarding Corp.*, 222 USPQ 355 (TTAB 1983). We find that the requisite relationship between applicant's and registrant's goods exists in this case, and that the second *du Pont* factor accordingly weighs in favor of a finding of likelihood of confusion.

We also find that the ninth *du Pont* factor, "the variety of goods on which a mark is or is not used," weighs in favor of a likelihood of confusion finding in this case. According to the cited registration, registrant uses its PINE CONE mark on a variety of different fruits and vegetables. We find it likely that purchasers, when encountering additional fruits such as applicant's marketed under the arbitrary PINE CONE mark, would assume that a source, sponsorship or other connection exists.

Applicant argues that the tenth *du Pont* evidentiary factor requires consideration of "laches and estoppel attributable to owner of prior mark and indicative of lack of confusion," that evidence of such laches or estoppel exists in this case, and that this evidence weighs in applicant's favor in the likelihood of confusion analysis. Specifically, applicant contends that the mark it seeks to register is a revival and reproduction of an old orange box

label that was in use since at least as early as 1901 by a third party, Highland Orange Association, but subsequently abandoned;[8] that such use of the label by the Highland Orange Association predates the 1925 filing date of the cited registration, as well as the 1925 date of first use alleged therein, and that accordingly "the mark for oranges is the prior mark";[9] that the Southern California Fruit Exchange (a citrus growers' cooperative which was the predecessor of the Sunkist organization, according to applicant), on behalf of its member the Highland Orange Association, marketed oranges under the Pine Cone brand in "most if not all markets of the United States" since at least as early as 1901; and that

> inherent in registrant's decision in 1925 to begin to use and to apply to register "Pine Cone" for certain canned fruits and vegetables would be a good faith belief on the part of registrant that there would be no likelihood of confusion arising from his use of the mark.  This would give rise to judicial estoppel, if not ordinary estoppel.

(Applicant's brief, p. 16.)

---

[8] Applicant admits that it is not the successor to, nor otherwise in privity with, the Highland Orange Association.  Applicant contends that many of these old, abandoned labels have been revived and adopted as marks by citrus growers today.

[9] Priority is not an issue in this case, nor in any other ex parte Section 2(d) refusal.

We are not persuaded by applicant's argument.  We find that the evidence of record is insufficient to prove that the owner of the cited registration knew of the Highland Orange Association's Pine Cone label when it filed its application in 1925, and thus there is no basis for attributing any laches or estoppel to the owner of the cited registration.  Applicant has submitted excerpts from a book published in 1915 entitled <u>Citrus Fruits</u>, by J.E. Coit, which includes at page 299 an illustration of the Highland Orange Association's Pine Cone label above the caption "A typical orange box label."  However, there is no evidence regarding the circulation of this book, nor, given the specialized subject matter of the book,[10] any other evidentiary basis for finding that registrant, which was not in the citrus trade, would have been aware of it.[11]

---

[10] The book is subtitled "An Account of the Citrus Fruit Industry with Special Reference to California Requirements and Practices and Similar Conditions."  J.E. Coit is identified, on the title page, as "Professor of Citriculture in the University of California and Citriculturist to the University of California Agricultural Experiment Station Formerly Superintendent in Charge Citrus Experiment Station Riverside, California."

[11] The illustration of the Highland Orange Association label in this 1915 book includes the designation "Registered Trade Mark," but there is no evidence in the record, nor in the Office's records, that the label, or the PINE CONE brand, was federally registered in 1915.  As discussed *infra* at footnote 16, there is evidence in the record that the Highland Orange Association obtained a federal registration of the PINE CONE mark in 1933.

14

Similarly, applicant has submitted excerpts from a February 1901 publication entitled <u>Brands of Oranges and Lemons Controlled by the Southern California Fruit Exchange</u>.[12] The label applicant seeks to register, among other labels, is reproduced on page 61 of this publication. Applicant asserts that "this publication was circulated <u>among the trade</u> to show labels controlled by Sunkist." (Applicant's April 16, 1998 response to first office action, at p. 2. Emphasis added.) However, it does not appear from the record that the owner of the cited

---

[12] The introduction to this publication includes the following text (at pp. 10 and 13):

The Southern California Fruit Exchange was incorporated in 1895. It is a cooperative organization, established by the orange and lemon growers for the purpose of marketing their products. During the four seasons ending with that of 1899-1900, the Exchange marketed nearly 15,000 carloads of oranges and lemons. The gross sales during this period were over $13,000,000. The system of marketing established by the Exchange is rapidly gaining favor with the growers. During the current season the Exchange will market approximately 9000 carloads of citrus fruits. The Exchange system of selling delivered [sic] is not only in favor with the growers, but equally popular with the trade, affording them an opportunity to examine the goods before purchasing. As shown by the following list, the Exchange has its own agents in every important market on the continent, and is prepared through these agents to offer the very best goods at all times.
…
The following pages will show the Exchanges and Associations for which the Southern California Fruit Exchange acts as marketing agent: Nearly 200 well-known and guaranteed brands are exclusively under the control of the Exchange. These brands are invariably packed under the same management, and from the same orchards, and the trade can therefore rely upon them for uniformity in quality and packing.

15

registration was in the citrus trade, and thus there is no basis for finding that he would have been aware of this publication. Likewise, we cannot impute any such knowledge of Highland's label to registrant from the fact that the Southern California Fruit Exchange marketed citrus products bearing that label, apparently among some 200 other labels, to the citrus trade in all major markets of the United States. Again, there is no evidence that registrant was in the citrus trade in 1925 or at any other time.

In sum, the evidentiary record does not support applicant's contention that registrant, when it filed its application in 1925, was aware of Highland Orange Association's PINE CONE label, much less that registrant's filing of the application in 1925 operates as an estoppel or otherwise is evidence that registrant believed that confusion was unlikely. There is no evidence of "laches or estoppel attributable to owner of prior mark and indicative of lack of confusion," and the tenth *du Pont* factor accordingly is neutral in this case.[13]

---

[13] Given the lack of sufficient evidence in the record to establish "laches or estoppel attributable to the owner of the prior mark," we need not reach the more fundamental question of whether applicant is entitled to rely on the tenth *du Pont* factor at all in this case. Arguably, the "laches and estoppel" provision set forth in subsection (d) of the tenth *du Pont* factor must be read in conjunction with the introductory language of the tenth factor. That is, "laches and estoppel attributable to owner of prior mark and indicative of lack of confusion" is

relevant only as an example of "the market interface between applicant and the owner of a prior mark." No such market interface between applicant and registrant exists in this case; applicant relies solely on an alleged (but unproven) market interface between registrant and the Highland Orange Association, an entity with which applicant admittedly (see *supra* at footnote 8) shares no privity. This construction of the "laches and estoppel" provision of the tenth *du Pont* factor is consistent with the well-settled general rule, in inter partes cases, that laches and estoppel are personal defenses which may not be asserted by a third party, such as applicant in this case, who lacks privity with the person entitled to assert the defense. *See, e.g., The Procter & Gamble Company v. Keystone Automotive Warehouse, Inc.,* 191 USPQ 468 (TTAB 1976). *But see Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 198 USPQ 151, 154 (CCPA 1978)(party's prior statement, in unrelated proceedings, of opinion on legal issue which is contrary to position taken in present proceeding is not an estoppel, but is relevant to the extent that it may be "illuminative of shade and tone in the total picture confronting the decision maker").

Additionally, and aside from the privity issue, we have found no reported cases in which the "laches and estoppel" provision of the tenth *du Pont* factor was applied in the context of an ex parte appeal, nor has applicant cited any such cases. It is true that *du Pont* itself was an ex parte case, but it did not involve laches or estoppel, on its facts. The only reported ex parte case we have found in which the applicant attempted to overcome a Section 2(d) refusal by asserting estoppel is the pre-*du Pont* case of *In re National Distillers and Chemical Corporation*, 132 USPQ 271 (CCPA 1962). The Court rejected the applicant's estoppel argument in that case, and held that laches, estoppel and acquiescence are applicable only in inter partes proceedings, not in the context of ex parte appeals:

> We think that the clear intent of Congress was that section 19 [Trademark Act Section 19, 15 U.S.C. §1069] be limited to inter partes proceedings, and this for the very sound reason that the equitable principles of laches, estoppel and acquiescence are based on facts and should not be applied either in favor of or against one not a party to the proceeding. An ex parte proceeding arising from the refusal of the Patent Office to register a trademark does not become an inter partes proceeding in the sense of section 19 of the Lanham Act (15 U.S.C. 1069), as urged by applicant, merely because the applicant and the Patent Office appear many times in opposing roles.

Applicant also appears to be arguing that the absence of actual confusion during "decades" of simultaneous use by registrant and the Highland Orange Association (and its successors-in-interest) of their respective PINE CONE marks[14] is evidence that there is no likelihood of confusion in this case. (Applicant's brief at 16.) However, inasmuch as we have heard from neither registrant nor the Highland Orange Association in this appeal, we cannot conclude that, in fact, no instances of actual confusion ever occurred. Moreover, there is no evidence in the record from which we can determine that a meaningful opportunity for actual confusion ever existed. We do not know the amount and extent of registrant's sales of its goods under the mark, nor is there any evidence regarding the amount and extent of Highland Orange Association's sales under its mark. It appears that, as of 1901, Highland Orange Association's label was one of many

---

132 USPQ at 276. It is unclear whether this statement of the law was implicitly overruled by the Court in *du Pont*. However, that question, as well as the privity question, are moot in this case because the evidence of record does not demonstrate any laches or estoppel attributable to the owner of the registration cited as a bar to registration of applicant's mark.

[14] According to the allegation of use in the cited registration registrant commenced use of its mark in 1925. Use of the Highland Orange Association mark apparently commenced in 1898, and continued until some undetermined time between 1953, when its registration was renewed, and the expiration of its registration in 1973. See *infra* at footnote 16. Applicant commenced use of its mark in 1997.

marketed nationally by the Southern California Fruit Exchange, but we cannot determine how much of the Exchange's citrus sales were under that particular label. In sum, although there is no evidence of actual confusion in the record, we cannot conclude that such absence is entitled to any significant weight in our likelihood of confusion analysis in this case. *See In re Kangaroos U.S.A.*, 223 USPQ 1025 (TTAB 1984).

In summary, and for the reasons discussed more fully above, we find that applicant's mark and registrant's mark are highly similar in terms of appearance, sound, and connotation, and that they present essentially the same overall commercial impression. Likewise, we find that there are no third parties using similar marks on similar goods, an indication that registrant's PINE CONE mark is arbitrary and strong, and entitled to a relatively broad scope of protection. We also find that applicant's goods and registrant's goods are sufficiently related to give rise to source confusion when marketed under these highly similar marks, and that the likelihood of source confusion is is heightened by the fact that registrant uses its arbitrary mark on a variety of fruits and vegetables. Applicant's and registrant's goods are sold in overlapping trade channels, i.e., to wholesalers and storeowners, and

although we assume that these wholesalers and storeowners are careful, sophisticated purchasers of the respective goods, we cannot conclude that they necessarily are immune to source confusion in these circumstances. There is no evidence of any laches or estoppel attributable to registrant and indicative of a lack of confusion. Although there is no evidence of any actual confusion, there also is no evidence that a meaningful opportunity for actual confusion has existed, and the absence of actual confusion accordingly is entitled to little weight in our likelihood of confusion analysis.

Having carefully considered and weighed all of the evidence of record pertaining to the *du Pont* likelihood of confusion factors, we conclude that a likelihood of confusion exists, and that registration of applicant's mark is barred under Trademark Act Section 2(d).

In addition to its arguments under Section 2(d), applicant relies heavily on the administrative law doctrine of "reasoned decisionmaking" in support of its claim to entitlement of the registration it seeks. Under this doctrine, applicant contends, a federal agency must treat like cases alike, and may not casually ignore its own past decisions. Those prior decisions are not forever binding on the agency, but any inconsistency between the prior

decisions and its present decision must be rationally explained.  In support of this argument, applicant cites *Atchison, Topeka & Santa Fe Railway Co. et al. v. Wichita Board of Trade et al.*, 412 U.S. 800; 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973); *Ricardo Davila-Bardales v. Immigration and Naturalization Service*, 27 F.3d 1 (1st Cir. 1994); *Internal Revenue Service v. Federal Labor Relations Authority*, 963 F.2d 429 (D.C. Cir. 1992); *Hall v. McLaughlin*, 864 F.2d 868 (D.C. Cir. 1989); and *Shaw's Supermarkets, Inc. v. National Labor Relations Board*, 884 F.2d 34 (1st Cir. 1989).

Applicant notes that in 1933, and despite the existence at that time of the 1925 PINE CONE registration which has been cited against applicant in the present case, the Office issued (to the aforementioned Highland Orange Association) a registration of the PINE CONE mark for fresh citrus fruits.[15]  Citing the "reasoned decisionmaking"

---

[15] Registration No. 302,056, issued March 28, 1933.  The Board notes that the physical file of this registration apparently is no longer available, and that the registration record likewise does not appear in the Office's automated database.  However, applicant has submitted a copy of page 886 of the Official Gazette of May 26, 1931, which shows that the mark was the subject of application Serial No. 310,563 filed January 30, 1931, and that 1898 was alleged in the application as the date of first use.  Applicant also has submitted a copy of page 178 of the Index of Trademarks, 1933, which includes a notice of the issuance of Registration No. 302,056 on March 28, 1933, and a copy of page 663 of what appears to be the January 20, 1953 issue of the Official Gazette, which includes a notice that the

21

doctrine, applicant argues that the present Section 2(d) refusal must be reversed unless the Office can provide a reasonable explanation for its inconsistent treatment of applicant's mark, i.e., an explanation as to why the cited 1925 registration should bar registration of applicant's PINE CONE mark today but did not bar registration of essentially the same mark, for the same goods, in 1933.

We have carefully considered applicant's arguments on this issue and the cases cited by applicant in support thereof, but we are not persuaded that the doctrine of "reasoned decisionmaking" precludes our affirmance of the Trademark Examining Attorney's Section 2(d) refusal in this case.

First, the Office's 1933 decision to register the mark applicant now seeks to register is not the type of previous agency precedential decision that triggers the "reasoned decisionmaking" doctrine. Applicant cites no authority for his argument to the contrary. The cases applicant has cited all involved an agency's failure to adhere to its settled "policies," "norms," "rules," "standards" or

---

registration was renewed on March 28, 1953 to Gold Buckle Association, the apparent successor-in-interest to Highland Orange Association, the original registrant. The Board has not been able to determine from the Office's records the subsequent history of Registration No. 302,056. However, it appears that the registration was not renewed a second time in 1973, and that it accordingly has expired.

"methods of analysis," as established in its prior adjudicated, non-summarily decided precedential cases. Indeed, in *Ricardo Davila-Bardales v. Immigration and Naturalization Service*, *supra*, the Court explained the "reasoned decisionmaking" doctrine as follows:

> Though the law does not require that all officials of a large agency "react similarly or interpret regulations identically" in every case, it does prohibit an agency from adopting significantly inconsistent **policies** that result in the creation of "**conflicting lines of precedent** governing the identical situation."
> …
> … the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation, raises precisely the kinds of concerns about arbitrary agency action that the consistency doctrine addresses **(at least where the earlier decisions were not summary in nature, but, rather, contained fully reasoned explications of why a certain view of the law is correct).**

27 F.3d at 5 (emphasis added; internal citations omitted).

In all of the cases cited by applicant, the prior agency decisions with which the complained-of agency decisions were alleged to be inconsistent were fully adjudicated decisions made by the agency's Administrative Law Judges or equivalent policy-making and adjudicative personnel.  None of the cases cited by applicant involved an alleged inconsistency between the agency's complained-of

23

decision and a prior agency decision which was isolated, summary, non-adjudicatory, and non-precedential, such as the Office's issuance of the 1933 registration relied on by applicant in this case.

For this reason, we find the "reasoned decisionmaking" doctrine and cases cited by applicant to be inapposite to the present case. Instead, we shall adhere to the long-standing, well-settled precedent governing our proceedings, which holds that the Board is not bound by prior decisions of Trademark Examining Attorneys, and that each case must be decided on its own merits and on the basis of its own record, in accordance with relevant statutory, regulatory and decisional authority. *See, e.g., In re International Flavors & Fragrances Inc.,* 183 F.3d 1361, 51 USPQ2d 1513 (Fed. Cir. 1999); *In re Cooper*, 117 USPQ 396 (CCPA 1958)("…the decision of this case in accordance with sound law is not governed by possibly erroneous past decisions by the Patent Office); *In re Perez*, 21 USPQ2d 1075 (TTAB 1991)(§2(d) refusal based on prior conflicting registration affirmed, despite fact that the conflicting registration had not been cited as bar to applicant's previous registration (now expired) of same mark for same goods; Board not bound by decisions of prior Examining Attorneys); *In re BankAmerica Corporation*, 231 USPQ 873, 876 (TTAB

24

1986)("Section 20 of the Trademark Act, 15 USC §1070, gives the Board the authority and duty to decide an appeal from an adverse final decision of the Examining Attorney. This duty may not and should not be delegated by the adoption of conclusions reached by Examining Attorneys on different records"); and *In re National Retail Hardware Association*, 219 USPQ 851, 854 (TTAB 1983)("As in Cooper, we do not here have sufficient facts before us on which to evaluate whether the previous action of the Examiner which resulted in issuance of the previous registration was or was not erroneous. Nevertheless, as Cooper held, it is sufficient that the facts now before us and the application to them of sound law persuade us that the mark does not meet the requirements for registration set forth in Sections 2(d) and 2(e)(1) of the statute").

In any event, and even assuming that the "reasoned decisionmaking" doctrine were applicable to this case, we find that there is a plausible, rational explanation for the apparent inconsistency inherent in the Office's registration of Highland Orange Association's PINE CONE mark in 1933 and its refusal to register applicant's mark today. Simply put, the law has changed.

In 1933, the Trademark Act of 1905 governed the federal registration of marks. Under that statute, a

25

prerequisite to the refusal of registration on the ground of likelihood of confusion was that the goods of the applicant and the prior registrant be "of the same descriptive properties." Trademark Act of 1905, Section 5. The Lanham Act of 1946 replaced that standard with the more flexible modern "related goods" test, which does not require that the goods themselves be the same or similar to each other, but rather requires only that they be sufficiently related that source or other confusion is likely. *See, e.g., Hunt Foods and Industries, Inc. v. The Gerson Stewart Corp.,* 151 USPQ 350 (CCPA 1966); *Hollywood Water Heater Co. v. Hollymatic Corporation*, 124 USPQ 452 (CCPA 1960); *Pep Boys – Manny, Moe and Jack v. The Edwin F. Guth Company,* 94 USPQ 158 (CCPA 1952); *The Alligator Company v. Larus & Brother Company, Inc.*, 93 USPQ 436 (CCPA 1952), overruled on other grounds* by *Popular Merchandise Co. v. "21" Club, Inc.,* 145 USPQ 203 (CCPA 1965); and J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§24:4-24:6 (4th Ed. 1999).

Thus, because the canned goods identified in the 1925 registration were not necessarily "of the same descriptive properties" as the fresh citrus fruits identified in the application which matured into the 1933 Highland Orange Association registration, the 1905 Act did not bar issuance

of the 1933 registration.  Under the more flexible standard set forth in the 1946 Lanham Act and subsequent case law, however, and for the reasons discussed at length in this opinion, we find that the goods identified in applicant's application are sufficiently closely related to the goods identified in the cited 1925 registration that source confusion is likely to result from the use of applicant's and registrant's confusingly similar marks.  Based on this finding and on our findings under the other relevant *du Pont* factors, and notwithstanding the Office's 1933 decision under the Trademark Act of 1905, we conclude that registration of applicant's mark is barred under Section 2(d) of the Trademark Act of 1946.

Decision:  The refusal to register is affirmed.